UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC.,<br><br>Defendant. | Case No. C-12-3970 RMW |
| SOFTWARE RIGHTS ARCHIVE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>LINKEDIN CORPORATION,<br><br>Defendant. | Case No. C-12-3971 RMW |
| SOFTWARE RIGHTS ARCHIVE, LLC,<br><br>Plaintiff,<br><br>v.<br><br>TWITTER, INC.,<br><br>Defendant. | Case No. C-12-3972 RMW<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO STAY PENDING *INTER PARTES* REVIEW**<br><br>[Re: Docket No. 65 in No. 12-3970[1]] |

Defendants Facebook, Inc., LinkedIn Corporation and Twitter, Inc. move to stay the case pending *inter partes* review ("IPR") of the patents-in-suit by the United States Patent and Trademark Office ("PTO"). Defendants filed IPR petitions at the PTO on July 30, 2013

---

[1] Pursuant to the court's direction, the motions papers are all filed exclusively in the docket for case number 12-03970.

ORDER GRANTING DEFENDANTS' MOTION TO
STAY PENDING *INTER PARTES* REVIEW        -1-
C-12-3970, C-12-3971, C-12-3972 RMW; ALG

challenging the validity of 30 of 140 claims in the patents-in-suit. All 30 claims currently asserted in this case are before the PTO in defendants' IPR petition. Plaintiff Software Rights Archive, LLC ("SRA") opposes defendants' motion to stay these related cases pending the resolution of the defendants' IPR petitions. Having considered the arguments of the parties and for the reasons set forth below, the court GRANTS defendants' motion to stay until the court has had an opportunity to review the PTO's decision on whether or not to grant defendants' IPR petitions.

## I. BACKGROUND

SRA owns U.S. Patents Nos. 5,544,352 ("'352 Patent"), 5,832,494 ("'494 Patent"), and 6,233,571 ("'571 Patent"), all titled "Method and Apparatus for Indexing, Searching and Displaying Data" ("patents-in-suit"). The patents relate to methods for searching data and displaying results using "proximity indexing," where the data search is based on numerical representations of "relations, patterns and similarity found among the data in the database." *See, e.g.*, '352 Patent Abstract. In May 2010, Google petitioned for *ex parte* reexaminations of the patents-in-suit. In September and October 2012, the PTO issued reexamination certificates for the patents-in-suit cancelling a handful of claims, adding new claims and upholding certain claims as amended.[2] On July 27, 2012, SRA sued Facebook, LinkedIn and Twitter in separate actions alleging infringement of the patents-in-suit. On July 30, 2013, all defendants jointly initiated four IPR proceedings at the PTO,[3] challenging the validity of 31 claims on the basis of prior art not previously before the PTO in the , including all 30 claims currently asserted in this lawsuit.

Pursuant to the Leahy–Smith America Invents Act ("AIA"), Pub. L. No. 112–29, § 6(a), 125 Stat. 284, 299–304 (2011), codified at 35 U.S.C. §§ 311–319 (2013), the IPR proceeding

---

[2] Specifically, in the '352 Patent, one claim was cancelled and nine claims were added; in the '494 Patent, six claims were cancelled and twenty-one claims were added; and in the '571 Patent, ten claims were added and twelve claims were upheld as amended. *See* Reexamination Certificates, Compl. Exs. B, D and F.

[3] The parties initiated two separate IPR proceedings with respect to the '494 Patent, one directed to the claims relating to "numerical representations" and the other directed to the claims relating to "cluster links." *See* Richey Decl., Dkt. No. 66, Exs. 5 and 6.

replaces the old *inter partes* reexamination ("reexamination") proceeding. "The purpose of this reform was to 'convert[ ] inter partes reexamination from an examinational to an adjudicative proceeding.'" *Abbott Labs. v. Cordis Corp.*, 710 F.3d 1318, 1326 (Fed. Cir. 2013 (quoting H.R.Rep. No. 112–98, pt. 1, at 46–47 (2011)). An IPR petitioner may challenge patent validity under 35 U.S.C. §§ 102 or 103 "only on the basis of prior art consisting of patents or printed publications." 35 U.S.C. § 311(b). To initiate an IPR, the petitioner must show "that the information presented in the petition filed . . . and any response . . . shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." *Id.* § 314(a) (In contrast, the old reexamination proceeding required a showing of a "substantial new question of patentability."). Following a petition, the PTO has three months from the date the patent holder files a response, or the date that the response was due if no response is filed, to decide whether to institute the IPR. 35 U.S.C. § 314(b).

The AIA requires a final determination by the PTO in an IPR proceeding within one year, which may be extended up to six months based upon a showing of good cause. *Id.* § 316(a)(11). "For comparison, the old reexamination proceeding averaged over thirty-seven months in the second quarter of fiscal year 2013." Order Conditionally Granting Defs.' Mot. to Stay, *Pi-Net Int'l, Inc. v. Focus Business Bank* ("*Pi-Net* Conditional Stay Order") at 5, Case No. 12-4958, Dkt. No. 58 (N.D. Cal. Aug. 16, 2013). In the *Pi-Net* cases, the court noted that such a "promise" of shorter proceedings *may* convince even "skeptical" judges to exercise their inherent discretion to stay cases pending IPR proceedings at the PTO. *Id*. at 2-3.

Following a final determination in an IPR, petitioner is estopped from asserting in a later district court or International Trade Commission action that a "claim is invalid on any ground that the petitioner raised or reasonably could have raised during that *inter partes* review." 35 U.S.C. § 315(e)(2). Defendants in this case would be subject to these estoppel provisions of the AIA (in the event that the PTO grants the IPR petitions and once a final decision is rendered) because— unlike the *Pi-Net* defendants who did not themselves file the IPR petitions—they are the IPR petitioners with respect to all three patents-in-suit.

ORDER GRANTING DEFENDANTS' MOTION TO
STAY PENDING *INTER PARTES* REVIEW                -3-
C-12-3970, C-12-3971, C-12-3972 RMW; ALG

Here, the deadline for the PTO's decision on whether to grant defendants' IPR petitions is February 5, 2014. The defendants seek a stay of the respective cases starting now, and assuming the PTO grants the IPR petitions, extending through the conclusion of the IPR proceedings.

## II. ANALYSIS

### A. Legal Standards

"Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Ethicon Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988). This inherent power to stay a case pending the PTO's review of a patent "*resides with the Court* to prevent costly pretrial maneuvering which attempts to *circumvent* the reexamination procedure." *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1342 (Fed. Cir. 1983) (quoting H.R. Rep. No. 1307 Part I, 96th Cong., 2d Sess. 4 (1980). A stay may be "particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were cancelled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecomms. Tech., LLC Patent Litig.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005). The burden is on the party seeking the stay to persuade the court that a stay is appropriate. *Nken v. Holder*, 556 U.S. 418, 433-34 (2009).

Courts traditionally consider three factors in determining whether to stay a case pending the PTO's review of a patent-in-suit: "(1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Cygnus*, 385 F. Supp. 2d at 1023.

### B. Whether Discovery is Complete and a Trial Date Has Been Set

The defendants argue that this factor favors granting a stay because the cases "are in the early stages of discovery" and no trial date has been set. Defs.' Br. 9, Dkt. No. 65 ("Briefing on claim construction and summary judgment issues dependent on claim construction will not commence until December 2013, and the *Markman* hearing will be held in February 2014.").

Defendants also argue that the parties are in early stages of fact discovery, having taken "only one deposition." *Id.*

SRA contends just the opposite: that "this case is too advanced to permit a stay because significant merits discovery has already been conducted." Opp'n 7, Dkt. No. 71. For example, SRA points out that: (1) defendants have produced "over 150,000 pages of documents," propounded interrogatories, and served preliminary infringement contentions and invalidity contentions; (2) Facebook has produced its source code, which SRA has engaged three experts to review; and (3) the court has considered and ruled on two discovery disputes, engaging a technical advisor with respect to the second dispute. *Id.* at 7-8.[4]

The defendants cite two cases from this district to support the argument that courts *deny* stays in cases far less advanced than this one: *Fujitsu Ltd. v. Nanya Tech. Corp.*, No. 06-6613, 2007 WL 3314623 (N.D. Cal. Nov. 6, 2007) and *Affinity Labs of Tex., LLC v. Nike, Inc.*, No. 10-5543, 2011 WL 1833122 (N.D. Cal. May 13, 2011). In *Fujitsu*, no depositions had been taken but there had been "significant factual discovery." 2007 WL 3314623, at *1-*2. The court found that the amount of fact discovery weighed against a stay. *Id.* However, the *Fujitsu* court's decision to deny the stay ultimately hinged on the second two factors: (1) in the context of *ex parte* reexamination, there was only a very small chance ("0.0025 percent") that all claims in each patent-in-suit would be cancelled; and (2) defendants unduly prejudiced plaintiffs by initially filing the case in the district of Guam, from where the case had to be transferred for lack of personal jurisdiction (and consolidated with plaintiff's case in this district), and then waiting nine months to file the reexamination request. *Id.* at *3.

In *Affinity Labs*, very little discovery had been conducted and there had not even been a case management conference, which the court found to weigh *in favor* of a stay. 2011 WL 1833122, at *1. The court ultimately denied the stay, however, based on the third factor (prejudice), concluding that: (1) the reexamination could take up to three years; and (2)

---

[4] The parties recently filed a third Discovery Dispute Joint Report. Dkt. No. 76.

defendants unduly waited over four months from the date of the reexamination requests to move to stay the case. 2011 WL 1833122, at *2-*3.

This case is different than *Fujitsu* and *Affinity Labs*, first in that those cases involved the old reexamination proceedings, which presented a much greater risk of delay. More importantly, the IPR proceeding here *is* highly likely to simplify the issues before the court and there is no specific prejudice to plaintiff in granting the stay in view of the sufficiency of monetary relief for SRA, as discussed *infra*. A stay at this still relatively early stage of discovery is not unprecedented, even in the old reexamination context. *See, e.g.*, *Convergence Techs. (USA), LLC v. Microloops Corp.*, No. 10-2151, 2012 WL 1232187, at *2 (N.D. Cal. Apr. 12, 2012) (granting stay in view of reexamination where discovery was "ongoing" and where the parties had already submitted claim construction briefs); *Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-0021, 2012 WL 7170593, at *2 (C.D. Cal. Dec. 19, 2012) (granting a stay where both sides had already expended "considerable resources" in moving towards the completion of fact discovery, although no depositions had been taken). Although the court recognizes that the parties have spent significant time and resources on discovery, discovery is not near completion,[5] only one witness has been deposed, claim construction briefing has not commenced, deadlines for dispositive motions are still months out, and the court has not set a trial date.

In sum, the court considers this factor neutral, and turns to the other two factors.

**A. Whether a Stay Will Simplify the Issues**

Defendants argue that a stay would necessarily simplify the issues before the court because the entire infringement dispute will become moot if the PTO invalidates the claims in the IPR proceeding. Defendants cite PTO statistics showing that: (1) the PTO has granted 93.6% of IPR petitions as of July 22, 2013; and (2) in the context of the old *inter partes* reexamination proceeding, 42% of *inter partes* reexaminations (from 1999 through September 13, 2013) resulted

---

[5] The parties recently stipulated to extend claim construction discovery into early next year. Dkt. No. 73.

in all claims being cancelled or disclaimed. Richey Decl., Exs. 14 and 15, Dkt. Nos. 66-14 and 66-15.

SRA counters that a stay will not simplify the issues because the likelihood that *all* 30 claims at issue will be cancelled is small. According to SRA, in the unlikely event that the PTO does cancel all 30 claims currently asserted in this case, "SRA will [still] have 40 claims not challenged in an IPR to assert." Opp'n 13.[6] SRA relies on this court's decision in the *In re Google Litigation* case involving SRA, where instead of granting a stay pending the May 2010 reexaminations of the patents-in-suit, the court required SRA to limit its asserted claims to 20. *See* Case No. 08-3172 RMW, Dkt. No. 208 (N.D. Cal. Oct. 15, 2010) ("*Google* Stay Order"). At the hearing, SRA proposed a similar solution here, volunteering to limit its asserted claims to 20 in an effort to "guarantee" a simplification of issues before the court without a stay.

In the *In re Google Litigation* cases, in an effort to avoid a stay, SRA consented to narrow the asserted claims from 62 to 20, which under the facts there, was more likely to simplify the issues before the court than the reexamination proceeding. *Google* Stay Order at 4. In that case, the court relied on statistical data as of June 30, 2010 in the context of *ex parte* reexaminations, indicating that the PTO cancels all claims at issue in *ex parte* reexaminations only 12% of the time. *Id.* In contrast to the *ex parte* statistics, the more recent *inter partes* reexamination statistics indicate that the PTO cancels all claims in an *inter partes* reexamination 42% of the time. Richey Decl., Ex. 15. Also different in *In re Google* was that the defendants did not participate in the *ex parte* reexamination proceedings and were thus not bound by estoppel, nor did they consent to be bound by estoppel with respect to certain obviousness arguments. *Google* Stay Order at 4.

Here, the defendants are bound by the estoppel provisions of the AIA and thus cannot raise before this court any arguments that they raised or reasonably could have raised at the PTO, which heavily tips the scale in favor of granting the stay. *See Interwoven, Inc. v. Vertical*

---

[6] SRA originally asserted 70 claims, but the court ordered SRA to limit the asserted claims to 30 following Discovery Dispute Joint Report #1. Dkt. No. 41.

ORDER GRANTING DEFENDANTS' MOTION TO
STAY PENDING *INTER PARTES* REVIEW
C-12-3970, C-12-3971, C-12-3972 RMW; ALG
-7-

*Computer Systems, Inc.*, No. 10-4645, 2012 WL 761692, at *3 (N.D. Cal. Mar. 8, 2012) (denying stay where estoppel did not apply); *Pi-Net* Conditional Stay Order, Case No. 12-4958, Dkt. No. 58 (conditioning stay on defendants' agreement to be bound by the estoppel provisions of the AIA, where a separate entity brought the IPR petitions).

Moreover, all 30 claims currently asserted in this action are subject to PTO review. Even if these claims are not all cancelled, the IPR could encourage settlement or lead to amendments to the claims, which could create intervening rights and limit potential damages. To the extent SRA alleges that it still has 40 additional claims available to assert in the event that the PTO were to cancel the 30 claims currently asserted, SRA assumes without justification that those new claims would raise "non-duplicative issues" or "present[] unique issues as to liability or damages," and thus be allowed in. *See In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1311-12 (Fed. Cir. 2011). At the hearing, SRA argued that because it was required to limit its asserted claims to 30 prior to the completion of discovery, it is likely to amend its infringement contentions to include many of the narrower, dependent claims, such that all 30 asserted claims will no longer be subject to IPR. But even if SRA does assert some new claims post-discovery, the IPR will still clarify the scope of the 31 claims at issue there, from which—by SRA's admission at the hearing—many of the purported claims to be asserted depend.

Although there is no guarantee that an IPR will eliminate all the claims at issue, the higher standard to initiate an IPR ("reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition" as opposed to "substantial new question of patentability") gives at least some promise that certain challenged claims will be struck down or amended if the PTO grants the petitions. In addition, the limited statistics available to the court do indicate a likelihood that the PTO will grant the IPR petitions, at least with respect to some of the asserted claims.

The court concludes that this factor tips in favor of granting a stay.

## B. Whether a Stay Would Unduly Prejudice SRA

Defendants argue that SRA would not be unduly prejudiced if the court grants the stay because of: (1) the shorter time period for the IPR proceeding than the traditional reexamination proceeding; and (2) because the parties are not direct competitors, so monetary relief is sufficient to restore SRA to the *status quo ante* in the event of an infringement determination.

SRA counters that a stay could result in a multi-year delay because the one-year IPR proceeding could potentially be extended by six months, and could be followed by a request for rehearing or an appeal to the Federal Circuit, which would tack on substantially more time. SRA contends that: (1) it would "lose tremendous institutional knowledge of the accused systems gained over the past eight months" due to fading memory and potential unavailability of the SRA experts currently reviewing Facebook's source code; (2) "key fact witnesses may be inaccessible" or have faded memories; and (3) the relevant hardware and software is likely to "grow less available and less functional." Opp'n 20-21. SRA further argues that, instead of waiting a year from the filing of the complaint to file their IPR petitions (on July 30, 2013), defendants could have filed their IPR petitions as early as December 2012 when they were served with the first set of infringement contentions, or March 2013, when defendants served their first invalidity contentions. *Id.* at 21. At the hearing, SRA asked that if the court grants the stay, the court also grant SRA sixty days to complete its source code review so that its progress there is not frustrated or lost during the pendency of the stay.

Although there is no question that a delay of a year or longer (if the PTO grants a six month extension or if the parties appeal) *could* result in prejudice to SRA, SRA's assertions of prejudice based on delay alone are merely speculative. SRA has not identified a particular expert witness who is likely to be lost, nor is the court convinced that the relevant technology or evidence thereof would become "unavailable" for the purposes of a patent infringement analysis. Rather, the source code and technical documentation already produced would be preserved during the pendency of a stay. Delay alone, without specific examples of prejudice resulting therefrom, is insufficient to establish *undue* prejudice. *See Telemac Corp. v. Teledigital, Inc.*, 450 F. Supp.

2d 1107, 1111 (N.D. Cal. 2006) ("[T]he likely length of reexamination is not, in itself, evidence of undue prejudice.").[7] SRA is already in possession of the source code that it seeks additional time to review, the court is not persuaded that SRA will lose that information, and the court denies SRA's request for additional time to complete discovery.

Although defendants did wait nearly a year to file the IPR petitions, they properly filed the petitions within the statutory time frame, and the delay was not unreasonable under the facts here. SRA did not identify its 30 asserted claims until March 22, 2013. Defendants served preliminary invalidity contentions on April 29, 2013 and then spent three additional months to prepare and file the IPR petitions, which seems like a reasonable amount of time given the complexity of the claims, prosecution history and prior art at issue. *Accord Semiconductor Energy*, 2012 WL 7170593, at *3.

More importantly, because SRA and defendants are not competitors (SRA does not market any products or services covered by the claims of the patents-in-suit and does not seek a preliminary injunction), SRA does not risk irreparable harm by defendants' continued use of the accused technology and can be fully restored to the *status quo ante* with monetary relief. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1339-41 (Fed. Cir. 2012). This factor strongly favors granting the stay. *See, e.g.*, *Convergence Techs.*, 2012 WL 1232187, at *2-3 (granting stay, in part, because plaintiff did not practice the asserted patent and was not in direct competition with defendant); *Agavo Techs. Fiber IP (Singapore) Pte. Ltd. v. IPtronics Inc*, No. 10-2863, 2011 WL 3267768, at *5 (N.D. Cal. July 28, 2011) ("Unlike patent infringement actions involving non-practicing entities, infringement among competitors can cause harm in the marketplace that is not compensable by readily calculable money damages.").

Balancing all three factors, the court concludes that a stay is appropriate in this case. A stay effectuates the intent of the AIA by allowing the agency with expertise to have the first crack at cancelling any claims that should not have issued in the patents-in suit before costly litigation

---

[7] The *Telemac* court granted the stay, however, based on the late stage of the case and evidence of gamesmanship.

ORDER GRANTING DEFENDANTS' MOTION TO
STAY PENDING *INTER PARTES* REVIEW
C-12-3970, C-12-3971, C-12-3972 RMW; ALG
-10-

continues. *See* H.R. Rep. 112-98 (part I), at 39-40 (2011) (The AIA is aimed at "providing a more efficient system for challenging patents that should not have issued; and *reducing unwarranted litigation costs* and inconsistent damage awards." (emphasis added)).

### III. CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motion to stay. The stay continues until the court has had an opportunity to review the PTO's decision on whether or not to grant defendants' IPR petitions.

The court further orders the parties to file a joint status report regarding the PTO's decision on whether or not to grant defendants' IPR petitions within two days of the PTO's decision.

**IT IS SO ORDERED.**

Dated: September 17, 2013

/s/ Ronald M. Whyte
Honorable Ronald M. Whyte
United States District Judge