UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC,<br>Plaintiff,<br>v.<br>FACEBOOK, INC.,<br>Defendant. | Case No. 12-cv-03970-HSG<br>**ORDER GRANTING FACEBOOK'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br>Re: Dkt. Nos. 197, 198, 205, 212 |

Pending before the Court is Defendant Facebook, Inc.'s ("Facebook") motion for judgment on the pleadings. Dkt. No. 205 ("Mot."), 215 ("Opp."), and 222 ("Reply"). For the reasons explained below, the Court **GRANTS** the motion.[1]

## I. BACKGROUND

### A. The Patents

All three asserted patents, U.S. Patents Nos. 5,544,352 ("'352 Patent"), 5,832,484 ("'494 Patent"), and 6,233,571 ("'571 Patent"), share the same title—"Method and Apparatus for Indexing, Searching and Displaying Data"—and generally relate to a research tool for indexing, searching and displaying data that focuses on the relationship between items. *See* Dkt. No. 198-2 ('352 Patent), 198-4 ('494 Patent), 198-6 ('571 Patent). The '352 Patent is a parent patent of the continuation-in-part '494 and '571 Patents. All three share substantially the same written description, with the '494 and '571 Patents adding network- or web-related disclosure to the '352 patent. All three specifications identify problems in the then-existing text-based computer search

---

[1] Because the Court's reasoning applies to both the asserted claims and the contingent claims identified in Software Rights Archive, LLC's ("SRA") motion for leave to amend claim election and infringement contentions, the Court also **DENIES** that motion. Dkt. No. 198. The Court addresses the parties' related motions to seal portions of their brief and accompanying exhibits at the end of this Order.

technology (Boolean search), which would fail to return a desired result because the request was not precisely phrased, or would produce too many results without any indication as to which result was significant or important. *See e.g.*, '571 Patent, at col. 1, ll. 54 – col. 2, ll. 13. The patents instead use "non-semantic link analysis (i.e., the analysis of citation and hyperlink relationships between records) to enhance computerized searching of electronic databases such as those related to the World Wide Web." Dkt. No. 181 (First Amended Complaint or "FAC") at ¶ 14. These "indirect citation relationships, including hyperlink pointers to the World Wide Web, contain useful information concerning an object's 'importance' or 'relatedness' that could be used to identify the most relevant or related objects among a pool of objects," resulting in more useful search results. Opp. at 3 (citing '571 Patent, at col. 14, ll. 21 – col. 15, ll. 67, col. 48 ll. 19–62, col. 50, ll. 4–27; FAC ¶¶ 23–34).

### B.  Procedural Background

SRA filed an infringement action against Facebook on July 27, 2012. Dkt. No. 1. In its initial complaint, SRA alleged that Facebook uses, offers for sale, and sells services that are covered by the claims in the patents-in-suit. Dkt. No. 1 ¶¶ 12–20.

SRA notified the Court of disclosure of its initial asserted claims and infringement contentions on December 24, 2012. Dkt. No. 34 at 2. SRA's initial infringement contentions asserted 74 claims from the three patents-in-suit, and Facebook (along with Twitter, Inc. and LinkedIn Corp., defendants in related actions) sought in February 2013 to reduce the number of asserted claims to 30. Dkt. No. 41 at 2. Under *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312–13 (Fed. Cir. 2011), the Court granted Defendants' motion and ordered SRA to limit its initially asserted claims to 30. *Id*. The Court further noted that SRA would have "the opportunity to amend its infringement contentions on August 16, 2013, upon a showing of good cause," and the chance to add claims after technical discovery if those claims presented "unique questions of validity." *Id*. at 2. The Court ordered SRA to select the 30 claims to assert on or before March 8, 2013, and SRA did so. On September 5, 2013, the parties stipulated to extend SRA's deadline to amend its claim election and infringement contentions to November 15, 2013, noting that SRA "will need sixty days to complete the review of source code

discovery necessary to prepare its amended infringement contentions." Dkt. No. 73.

The cases were stayed on September 17, 2013, pending completion of proceedings before the United States Patent and Trademark Office ("PTO") or further order of the Court. Dkt. No. 82. The Court lifted the stay at the end of April 2019, as the PTO proceedings were completed in 2018. Dkt. Nos. 157, 158. At the end of the proceedings, only claims 26, 28, and 31 of the '571 Patent remained; all other elected claims were found unpatentable. *See* Dkt. No. 157 (summarizing PTAB and Federal Circuit findings). SRA subsequently sought leave to file a first amended complaint to add factual allegations concerning the patent eligibility of SRA's asserted claims, in light of the heightened pleading requirements resulting from the abrogation of Form 18 and the Supreme Court's decision in *Alice Corp. v. CLS Bank Int'l*, 573 U.S. 208 (2014). The Court granted SRA's motion, and SRA filed its FAC on July 30, 2019. Dkt. Nos. 178, 181.

On September 6, 2019, SRA filed a motion for leave to amend claim election and infringement contentions to add nine additional asserted claims to the three asserted claims. *See* Dkt. No. 198. SRA seeks to add '352 Patent claim 35, '494 Patent claims 2, 13, 34, 37, 43, 46, and 47, and '571 Patent claim 32. *Id.* On September 20, 2019, Facebook filed the present motion for judgment on the pleadings under 35 U.S.C. § 101. Dkt. No. 205. The Court held a hearing on both motions on December 12, 2019. *See* Dkt. No. 226.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure ("Rule") 12(c) a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." "Judgment on the pleadings is proper when, taking all allegations in the pleading as true, the moving party is entitled to judgment as a matter of law." *Stanley v. Trustees of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006). "Rule 12(c) is functionally identical to Rule 12(b)(6) and . . . the same standard of review applies to motions brought under either rule." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (quotation omitted). The Court will "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Section 101 of the Patent Act describes the scope of patentable subject matter as encompassing "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." 35 U.S.C. § 101. It is well settled that laws of nature, natural phenomena, and abstract ideas are excluded from the universe of patentable subject matter. *See Alice*, 573 U.S. at 216. These categories are not patent-eligible because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs.*, 132 S.Ct. 1289, 1293 (2012) (citations omitted). Allowing patent claims for laws of nature, natural phenomena, and abstract ideas would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.* at 1293. However, the Supreme Court has also recognized the need to "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Alice*, 573 U.S. at 217.

The Supreme Court and Federal Circuit have articulated a two-part test for determining whether a claim's subject matter is patent-eligible. First, a court "determine[s] whether a claim is 'directed to' a patent-ineligible abstract idea." *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat. Ass'n*, 776 F.3d 1343, 1346–47 (Fed. Cir. 2014) (citing *Mayo Collaborative Servs.*, 132 S.Ct. at 1296–97). If so, the Court then "consider[s] the elements of the claim—both individually and as an ordered combination—to assess whether the additional elements transform the nature of the claim into a patent-eligible application of the abstract idea." *Id.* at 1347. "This is the search for an 'inventive concept'—something sufficient to ensure that the claim amounts to 'significantly more' than the abstract idea itself." *Id.* (quoting *Mayo Collaborative Servs.*, 132 S.Ct. at 1294).

Two decisions of the Federal Circuit shed particular light on the *Alice* inquiry as applied to computer-related technology. In *Enfish, LLC v. Microsoft Corp.*, the Federal Circuit found it "relevant to ask whether the claims are directed to an improvement in computer functionality versus being directed to an abstract idea, even at the first step of the Alice analysis." 822 F.3d 1327, 1335 (Fed. Cir. 2016). "[T]he 'directed to' inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether 'their character as a whole is directed to

4

excluded subject matter.'" *Id.* (quoting *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015)). As set forth in *Enfish*, the key question is "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Id.* at 1335–36.

*In re TLI Commc'ns LLC Patent Litig.* ("TLI") emphasized that claims are drawn to an abstract idea if they are directed to "the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two." 823 F.3d 607, 612 (Fed. Cir. 2016). Thus, claims that describe "a new telephone, a new server, or a new physical combination of the two" are not abstract, but claims that describe a system and methods in "purely functional terms" without "any technical details for the tangible components" are abstract. *Id.*

Following *Enfish* and *TLI*, the Federal Circuit further refined the *Alice* inquiry as it applies to computer-related claims. For instance, in *McRO, Inc. v. Bandai Namco Games Am., Inc.*, the Federal Circuit defined the key inquiry as "whether the claims in these patents focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." 837 F.3d 1299, 1314 (Fed. Cir. 2016). In performing this analysis, the Court "must focus on the language of the asserted claims themselves," and "complex details from the specification cannot save a claim directed to an abstract idea that recites generic computer parts." *Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1149 (Fed. Cir. 2016). To determine whether the "claim's character as a whole is directed to excluded subject matter" the Court evaluates the claimed "advance" over the prior art. *Intellectual Ventures I LLC v. Erie Indem. Co.*, 850 F.3d 1315, 1325 (Fed. Cir. 2017) (quotation omitted). The Court is to "examine earlier cases in which a similar or parallel descriptive nature can be seen—what prior cases were about, and which way they were decided." *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 841 F.3d 1288, 1294 (Fed. Cir. 2016). Finally, in *Aatrix Software, Inc. v. Green Shades Software, Inc.*, the Federal Circuit emphasized that the question of eligibility may be determined at the pleadings stage "only when there are no

5

factual allegations that, taken as true, prevent resolving the eligibility question as a matter of law." 882 F.3d 1121, 1125 (Fed. Cir. 2018).

## III. ANALYSIS

Facebook moves for judgment on the pleadings pursuant to Rule 12(c), arguing that all asserted and contingent[2] claims are directed to the abstract idea of analyzing relationships between items and fail to assert any inventive concept to transform the nature of the claims into a patent-eligible application of the abstract idea. *See generally* Mot. The Court proceeds under the two-part test outlined in *Alice.*

### A. Step One

According to Facebook, "[t]he asserted and contingent claims all recite methods that are directed to the unremarkable concept of analyzing information about relationships between items." Mot. at 4. As noted above, the patents' specifications provide that "[t]he invention simplifies the research task by improving upon methods of searching data including textual objects and by implementing a user interface that significantly enhances the presentation of the data." '571 Patent at col. 3, ll. 24–30. While the Patent specification is helpful to provide background regarding the technology, the Court "must focus on the language of the asserted claims themselves." *Synopsys*, 839 F.3d at 1149. Accordingly, the Court details the specific recitations of the asserted claims.

Asserted claims 26, 28, and 31 of the '571 patent recite steps for analyzing information including hyperjump data and URLs and displaying the results. Dependent Claim 26 recites:

> 23. A method for displaying information about a network that has hyperjump data, comprising:
> choosing a node;
> accessing the hyperjump data;
> identifying hyperjump data from within the accessed hyperjump data that has a direct reference to the chosen node;
> determining hyperjump data from within the accessed hyperjump data that has an indirect reference to the chosen node using the identified hyperjump data, wherein the step of determining comprises proximity analyzing the identified hyperjump data; and
> displaying one or more determined hyperjump data,

---

[2] "Contingent claims" means the eight claims that SRA seeks to add via its motion for leave to amend claim election and infringement contentions. *See* Dkt. No. 198.

6

> wherein the chosen node is an object stored in a database that has direct relationships with other objects in said database and said direct relationships relate to hyperlink relationships on the world wide web; and wherein the step of proximity analyzing comprises:
> analyzing indirect relationships by scoring one or more paths of direct links between two indirectly related nodes by analyzing weights associated with direct links that make up the path between the nodes.
>
> 26. The method of claim 23, wherein the step of displaying is influenced by a number of times a web object is visited.

Dkt. No. 198-7 ("'571 Patent Reexam.") at col. 3, ll. 12–34, 48–49.  Independent Claim 28 recites:

> 28. A method for visually displaying data related to a web having identifiable web pages and Universal Resource Locators with pointers, comprising:
> choosing an identifiable web page;
> identifying Universal Resource Locators for the web pages, wherein the identified Universal Resource Locators either point to or point away from the chosen web page;
> analyzing Universal Resource Locators, including the identified Universal Resource Locators, wherein Universal Resource Locators which have an indirect relationship to the chosen web page are located, wherein the step of analyzing further comprises cluster analyzing the Universal Resource Locators for indirect relationships; and displaying identities of web pages, wherein the located Universal Resource Locators are used to identify web pages, wherein the step of displaying is influenced by a number of times a web object is visited and wherein the cluster analysis uses a damping factor.

*Id.* at col. 4, ll. 11–34.  Finally, dependent Claim 31 recites:

> 16. A method for navigating documents on the world wide web, comprising:
> choosing a document;
> identifying documents that have a direct relationship to the chosen document;
> locating documents that have an indirect relationship to the chosen document identifying Universal Resource Locators for the documents, wherein the identified Universal Resource Locators either point to or point away from the chosen document;
> analyzing Universal Resource Locators, including the identified Universal Resource Locators, wherein Universal Resource Locators which have an indirect relationship to the chosen document are located, wherein the step of analyzing further comprises analyzing the Universal Resource Locators for indirect relationships using cluster links; and
> displaying a located document.
>
> 31. The method of claim 16, wherein the step of displaying is influenced by a number of times a web object is visited

*Id.* at col. 2, ll. 19–37, col. 5, ll. 1–2.

Focusing on the language of the asserted claims, as it must, the Court agrees that the

7

claims are directed to an abstract idea, namely the collection, analysis, and display of certain information.

The Federal Circuit treats the "collecti[on of] information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016). It further "recognize[s] that merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis." *Id.* at 1354. The claims asserted here are directed to precisely what the Federal Circuit has held to be an abstract idea. They rely on existing types of information—such as Universal Record Locators, hyperlinks, and web objects—and outline a method to analyze relationships between items based on such information, then display the results. Although the alleged invention may obtain better search results than text-based Boolean searching, this does not represent any direct improvement to computer technology. The patents do not detail any efficiency benefits to the computer itself—such as improved memory availability or operating speed—but only point to improving the search results displayed generically to the user. The claims fail to detail how to achieve these results from a technological perspective, or to establish that any specific technology is required. They instead provide general detail about collecting and analyzing the information on conventional computers. The claims thus fit squarely within the "line of precedent that . . . classifies data collection, organization, and analysis as abstract—even where that produces new data—in the absence of a claimed technological improvement." *Brightedge Techs., Inc. v. Searchmetrics, GmbH*, 304 F. Supp. 3d 859, 867 (N.D. Cal. 2018); *see also Intellectual Ventures I*, 850 F.3d at 1326–27 (finding method claims reciting an index-searchable database abstract); *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) (holding "that filtering content [on the Internet] is an abstract idea because it is a longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract."); *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014) (finding that method regarding generation of a device profile claimed an abstract idea because it "describe[d] a process of

1 organizing information through mathematical correlations and [was] not tied to a specific structure
2 or machine").

3       The Court further finds that the contingent claims are directed to the same abstract idea.
4 SRA seeks leave to assert Claim 32, which was not challenged in any IPR petition and recites a
5 method that is substantially similar to the one detailed in the asserted '571 claims, but which relies
6 on "hyperjump data." *See* '571 Patent Reexam. at col. 5, ll. 3–14, col. 6, ll. 1–12. Contingent
7 Claim 35 of the '352 Patent depends from claims 26 and 34, which the PTAB and Federal Circuit
8 held invalid. It similarly recites a method for analyzing information that includes creating, storing,
9 and analyzing "numerical representations" based upon relationships. Dependent Claim 35 recites:

> 26. A non-semantical method for numerically representing objects in a computer database and for computerized searching of the numerically represented objects in the database, wherein direct and indirect relationships exist between objects in the database, comprising:
> marking objects in the database so that each marked object may be individually identified by a computerized search;
> creating a first numerical representation for each identified object in the database based upon the object's direct relationship with other objects in the database;
> storing the first numerical representations for use in computerized searching;
> analyzing the first numerical representations for indirect relationships existing between or among objects in the database;
> generating a second numerical representation of each object based on the analysis of the first numerical representation;
> storing the second numerical representation for use in computerized searching; and
> searching the objects in the database using a computer and the stored second numerical representations, wherein the search identifies one or more of the objects in the database.
>
> 34. The non-semantical method of claim 26, wherein objects in the database may be divided into subsets and wherein the marking step includes the step of marking subsets of objects in the database and wherein relationships exist between or among subsets of objects in the database.
>
> 35. The non-semantical method of claim 34 wherein the objects are textual objects with paragraphs and the subsets are the paragraphs of the textual objects, the method further comprising the steps of:
> creating a subset numerical representation for each subset based upon the relationships between or among subsets;
> analyzing the subset numerical representations;
> clustering the subsets into sections based upon the subset analysis; and
> generating a section numerical representation for each section,

> wherein the section numerical representations are available for searching.

'352 Patent at col. 35, ll. 28–54, col. 36, ll. 65 – col. 37, ll. 17. Importantly, the claim does not indicate that the numerical representations of textual objects change the character of the information. Instead it indicates that the "numerical information" is used to "analyz[e] . . . for indirect relationships existing between or among objects in the database." *Id.* Again, then, the claim states a method by which to collect and analyze relationships between items.

Most of the contingent claims of the '494 patent depend from claims the Federal Circuit held invalid. Contingent claims 2, 34, and 37 depend from invalid claim 1, and were not challenged in IPR. They recite:

> 1. A method of analyzing a database with indirect relationships, using links and nodes, comprising the steps of:
> selecting a node for analysis;
> generating candidate cluster links for the selected node, wherein the step of generating comprises an analysis of one or more indirect relationships in the database;
> deriving actual cluster links from the candidate cluster links;
> identifying one or more nodes for display; and
> displaying the identity of one or more nodes using the actual cluster links.
>
> 2. The method of claim 1 wherein each link is given a length, the step of generating the candidate cluster links comprises the steps of:
> choosing a number as the maximum number of link lengths that will be examined; and
> examining only those links which are less than the maximum number of link lengths.
>
> 34. The method of claim 1, wherein said use of cluster links in displaying the identity of identified nodes comprises using one or more cluster links to determine a rank which is used as a factor in display, and wherein said generation of candidate cluster links recursively analyzes a set of direct links in a path.
>
> 37. The method of claim 34, wherein an independent application determines a cost associated with accessing the identified nodes.

'494 Patent at col. 51, ll. 49–56; Dkt. No. 198-5 ('494 Patent Reexam.") at col. 1, ll. 27–32, 43–45. Claim 13 depends from claim 12, and similarly recites a process for analyzing relationships between objects, but does so by analyzing the "proximity" of one object to another. '494 Patent at col. 52, ll. 34–50.[3] And contingent claim 43, also not challenged in IPR, depends from claim 14.

---

[3] Neither claim 12 nor claim 13 was challenged in IPR.

10

1    Claims 15 and 16 also depend from claim 14 and were invalidated by the Federal Circuit.  Claim

2    43 recites:

> 14. A method for representing the relationship between nodes using stored direct links, paths, and candidate cluster links, comprising the steps of:
> a) initializing a set of candidate cluster links;
> b) selecting the destination node of a path as the selected node to analyze;
> c) retrieving the set of direct links from the selected node to any other node in the database;
> d) determining the weight of the path using the retrieved direct links; repeating steps b through d for each path; and
> e) storing the determined weights as candidate cluster links.
>
> 40. The method of claim 14, wherein said direct links are hyperlink relationships on the world wide web and said paths are chains of hyperlinks that make up indirect relationships, and wherein the determination of the path weight uses a damping factor.
>
> 42. The method of claim 40, wherein the selected node is an object on the worldwide web, further comprising: selecting actual cluster links from the stored candidate cluster links based upon an analysis of a proximity of the selected node to another node, using actual cluster links to calculate a value for an object prior to a search query, wherein said value is used to determine the object's importance, and storing said value in an index prior to searching.
>
> 43. The method of claim 42, wherein the determination of importance considers a number of times the web object is visited.

*Id.* at col. 52, ll. 51–64; '494 Patent Reexam. at col. 1, ll. 58–62, col. 2, ll. 1–12.  Finally, claims 46 and 47, also not challenged in IPR, depend from invalid claim 18.  These claims describe substantially the same numerical representation analysis described in dependent claim 35 of the '352 Patent, but include an analytical step that requires ranking numerical representations by "at least a number of times a web object is visited."  '494 Patent Reexam. at col. 2, ll. 24–34.

None of these contingent claims compel any different outcome than discussed above.  Each contingent claim is similarly directed to the abstract idea of collecting, analyzing, and displaying information.  The only real differences between the contingent claims and the asserted claims are the limitations to certain types of relationships, different types of analyzed information (numerical representations), and other analytical methods (recursive analysis).  None of these differences change the conclusion that the patents are directed to abstract ideas.  *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1169 (Fed. Cir. 2018) ("We have already noted that limitation of

the claims to a particular field of information . . . does not move the claims out of the realm of abstract ideas.").

SRA makes three arguments for why the claims are not directed to an abstract idea, and instead recite a patent eligible invention. Opp. at 8–16. First, SRA argues that the claims recite specific technological improvements to search and display methods. Second, SRA argues that the claims are directed to improved data structures reflecting indirect relationships of hyperlinks to achieve search improvements. Finally, SRA argues that the claims are directed to an improved display using the analysis of indirect relationships and visits to web objects. The Court does not find any of these arguments persuasive.

SRA first argues that the claims recite specific technological improvements to search methods via identification and use of "indirect relationships in a network (a new source of information) to locate web pages and objections for display." Opp. at 9. As an initial matter, even if the Court accepts that indirect relationships are a new source of information, novelty is considered in the second step of the *Alice* analysis. *See Synopsys, Inc. v. Mentor Graphics Corp.*, 839 F.3d 1138, 1151 (Fed. Cir. 2016). Next, limiting the invention to a specific type of information (indirect relationships) does not make "an abstract concept any less abstract under step one." *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1342 (Fed. Cir. 2017) ("*Intellectual Ventures II*"). The invention's use of indirect relationships simply changes the information relied upon by a generic computer to organize, analyze, and display items. Unlike cases in which the claims recite a specific improvement to the functioning of the computer, here "the focus of the claims is not on such an improvement in computers as tools, but on certain independently abstract ideas that use computers as tools." *Elec. Power*, 830 F.3d at 1354. Additionally, despite SRA's insistence to the contrary, the claims do not specify how a computer achieves the desired result. The claims instead recite broad functions—"identifying" and "accessing" hyperjump data, "identifying" and "analyzing" URLs, "displaying" a document, and "generating" cluster links, among others—which "provide[] only a results-oriented solution" *Id.*[4]

---

[4] SRA's perfunctory argument that claim construction is necessary does not change the outcome. SRA suggests construing indirect relationships as "relationships where at least one intermediate

12

SRA next argues that the claims are directed to improved data structures (cluster links), and thus are not abstract. Opp. at 14–16. As the Federal Circuit recently noted, "[n]ot infrequently, patentees, like [Software Rights], latch on to . . . language from *Alice* and claim that their claims do 'improve the functioning of the computer itself.'" *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1363 (Fed. Cir. 2020). But the claims here do not do so. The invention's "cluster links" are, at their core, values obtained through statistical analysis of various related data points, which are then used to further analyze and display information. *See* FAC at ¶¶44–45. "Although these data structures add a degree of particularity to the claims, the underlying concept embodied by the limitations merely encompasses the abstract idea itself"— namely, collecting, analyzing, and displaying information. *Intellectual Ventures II*, 850 F.3d at 1341. There is nothing to indicate that these supposed structures somehow improve the computer's functioning. Thus, SRA's reliance on *Enfish, Finjan, Inc. v. Blue Coat Sys., Inc.*, 879 F.3d 1299, 1305 (Fed. Cir. 2018), and *Koninklijke KPN N.V. v. Gemalto M2M GmbH*, 942 F.3d 1143, 1151 (Fed. Cir. 2019), is unfounded. "[T]he self-referential database found patent eligible in *Enfish* did more than allow computers to perform familiar tasks with greater speed and efficiency; it actually permitted users to launch and construct databases in a new way." *Finjan*, 879 F.3d at 1305. In *Finjan*, the claim "employ[ed] a new kind of file that enable[d] a computer security system to do things it could not do before," which "allow[ed] the system to accumulate and utilize newly available, behavior-based information about potential threats." *Id.* And in *Gemalto*, "the appealed claims recite[d] a sufficiently specific implementation (i.e., modifying the permutation applied to the original data 'in time') of an existing tool (i.e., check data generating device) that improves the functioning of the overall technological process of detecting systematic

---

object exists between two objects and where the intermediate objects connect the two obtains through a chain of citations." Opp. at 5. SRA does not indicate whether this construction is disputed or explain why acceptance of its construction even matters. Regardless, even accepting this construction, the claims remain directed to an abstract idea since SRA's construction of "indirect relationships" just describes existing information regarding the data. *See Aatrix*, 882 F.3d at 1125 ("If there are claim construction disputes at the Rule 12(b)(6) stage, . . . the court must proceed by adopting the non-moving party's constructions or the court must resolve the disputes to whatever extent is needed to conduct the § 101 analysis, which may well be less than a full, formal claim construction.") (internal citations omitted).

errors in data transmissions." 942 F.3d at 1151.  The new structure, new file, or specific implementation of a change to an error-checking tool in these cases improved the computer's basic functioning, rather than simply reflecting the result of a statistical analysis that could be accomplished using any computer.

Finally, while the claims mention the display of information, they do so generically and do not specify any particular improvements to the display.  SRA argues that the specifications and FAC detail an improved display including a list of selected links "that allows the user to efficiently navigate a large network such as the World Wide Web to locate related content of interest."  Opp. at 17 (citing FAC at ¶¶ 71–83).  It is the claim language, however, that must detail any display improvements.  *See ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 769 (Fed. Cir. 2019) ("Ultimately, '[t]he § 101 inquiry must focus on the language of the Asserted Claims themselves,' and the specification cannot be used to import details from the specification if those details are not claimed.") (quoting *Synopsys*, 839 F.3d at 1149).  Here, the only claim language directed to an improvement in display appears in claim 23 (upon which claim 26 depends) and claim 28 of the '571 Patent, which recite in relevant part:

> displaying one or more determined hyperjump data
>
> displaying identities of web pages, wherein the located Universal Resource Locators are used to identify web pages, wherein the step of displaying is influenced by a number of times a web object is visited and wherein the cluster analysis uses a damping factor.

'571 Patent Reexam. at col. 3, ll. 12–34, col. 4, ll. 11–34.  This limited display-related language does not point to an improvement in the display, but instead simply relies on an existing display structure to present a user with more relevant web page links than previously presented. *Hypermedia Navigation LLC v. Facebook, Inc.* is thus distinguishable from the present case.  No. 17-cv-05383-HSG, 2018 WL 3932434 (N.D. Cal. Aug. 16, 2018).  In *Hypermedia*, the "invention improve[d] a specific online search mechanism by creating web programs that are geared towards entertaining and presenting the user with desirable information in a new way: through 'linearly linked websites.'"  *Id.* at *4.  The *Hypermedia* claims detailed an "improved user interface" including a "map area having a plurality of icons."  *Id.* at *3.  Neither the asserted nor contingent

14

claims include any such detail regarding any new means of displaying data.

The Court agrees with Facebook that *SAP America, Inc. v. InvestPic, LLC*, 898 F.3d 1161 (Fed. Cir. 2018), addressed an analogous situation. There, the invention sought to improve upon conventional financial analyses which "understate[d] the true risk and overstate[d] [the] potential rewards for an investment or trading strategy." 898 F.3d at 1164. The *SAP* claims related to techniques that utilize resampled statistical methods for the analysis of financial data, which the Federal Circuit ultimately held to be directed to the abstract idea of "collecting information, analyzing it, and displaying certain results of the collection and analysis." *Id.* at 1167 (quoting *Elec. Power*, 830 F.3d at 1353). Similar to those in *SAP*, the asserted and contingent claims concern (1) selecting certain information (indirect relationships in a network); (2) analyzing these relationships through statistical analysis (using cluster links); then (3) displaying the results of the analysis (which purportedly contain more relevant web page links than before). The claims do not focus on improving the computer, database, or display; they focus instead on a specific analysis and a conventional display of the results of the analysis.

Accordingly, the Court finds that the asserted and contingent claims are directed to the abstract idea of collecting and analyzing relationships between items and displaying the results, and thus fail *Alice* step one.

### B. Step Two

The Court next considers "whether the claimed elements—'individually or as an ordered combination'—recite an inventive concept." *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 217). To constitute an inventive concept, the claim limitations must "involve more than performance of well-understood, routine, [and] conventional activities previously known to the industry." *Aatrix*, 882 F.3d at 1128 (quoting *Content Extraction*, 776 F.3d at 1347–48). "Whether a combination of claim limitations supplies an inventive concept that renders a claim 'significantly more' than an abstract idea to which it is directed is a question of law." *BSG Tech LLC v. Buyseasons, Inc.*, 899 F.3d 1281, 1290 (Fed. Cir. 2018). However, "whether a claim limitation or combination of limitations is well-understood, routine, and conventional is a factual question," and the Court must take as true SRA's factual

allegations at this stage. *Id.* Still, SRA must include "plausible and specific factual allegations that aspects of the claims are inventive." *Cellspin*, 927 F.3d at 1317. "Any allegation about inventiveness, wholly divorced from the claims or the specification," will not defeat a motion to dismiss. *Id.*

SRA argues that the elements of the claims specify inventive concepts sufficient to survive *Alice* step two. Generally, the problem identified by the patents-in-suit was the failure of text-based search technology to return desired results. *See e.g.*, '571 Patent, at col. 1, ll. 54–col. 2, ll. 13. SRA contends that the invention produced better search results through three unconventional improvements: (1) "the use of indirect relationships as expressed as hyperlinks alone and in combination with the factor 'visits to a website' for search; (2) "cluster links" and other data structures that represented indirect relationships of hyperlinks; and (3) display arrangement of hyperjump data determined through the analysis of indirect relationships. Opp. at 19. SRA relies on allegations in its FAC to support its averments of unconventionality. *See e.g.*, FAC at ¶ 35.[5]

SRA's alleged "inventive concept" is essentially collecting and using specific "unconventional" pieces of information or data (indirect relationships and cluster links) to analyze the relationship between the item being searched and potential results. "It has been clear since *Alice* that a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept." *BSG Tech*, 899 F.3d at 1290. It was precisely this concept that the Court found was directed to the abstract idea of collecting and analyzing the relationship between items at *Alice* step one. Thus, it cannot now serve as the inventive concept. *See ChargePoint*, 920 F.3d at 774 (finding that network control, the alleged "inventive concept," is the abstract idea itself); *see also Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1349 (Fed. Cir. 2019) ("Yet wireless transmission is the only aspect of the claims that CGI points to as allegedly inventive over the

---

[5] SRA fails to rebut Facebook's showing that the invention uses generic computer components. *See generally* Opp. and Reply at 11. The specifications note that the system requires "a Computer Processor, a database for storing data, input means, display, and RAM," *see, e.g.*, '235 Patent at col. 9, ll. 35–37, and explain that each of these components "can be any device" that typically fulfills these functions. *Id.* at col. 9, ll. 39 – col. 10, ll. 18.

16

prior art . . . Wireless communication cannot be an inventive concept here, because it is the abstract idea that the claims are directed to.").

SRA insists that "[t]he inventive concepts of creating data structures representing and analyzing indirect hyperlink relationships on the Web for purposes of improved search was [sic] unconventional, non-routine and not well understood," so as to satisfy step two of the *Alice* test. FAC at ¶ 33. However, "[a]t *Alice* step two, it is irrelevant whether" the use of indirect relationships or cluster links to analyze items "may have been non-routine or unconventional as a factual matter." *BSG Tech*, 899 F.3d at 1291. "As a matter of law, narrowing or reformulating an abstract idea does not add 'significantly more' to it." *Id.*; *see also Berkheimer v. HP Inc.*, 881 F.3d 1360, 1370 (Fed. Cir. 2018) (finding no inventive concept where "the limitations [detailed in the claims] amount to no more than performing the abstract idea of parsing and comparing data with conventional computer components."). Here, the claims specify and are limited to certain types of information (hyperlinks, URLs, or cluster links) or types of analyses (recursive). However, they are nonetheless directed to collecting and analyzing the relationships between items. Thus, even though some of the information collected and analyzed may have been different from that used in text-based searching, such narrowing cannot amount to "significantly more" than the overall ineligible concept of information collection and analysis to which the claims are directed.

In addition, although SRA includes detailed allegations in the operative complaint regarding visual display improvements identified in the patents in suit (including a "map of a particular object in the database and its relationship to other database objects"), the allegations rely almost entirely on the patent specifications. *See* FAC at ¶¶ 71–83. SRA purports to rely on asserted claim 26 of the '571 Patent to demonstrate the inclusion of the details from the specification in the asserted claims. However, claim 26 of the '571 Patent only recites that "the step of displaying is influenced by a number of times a web object is visited." '571 Patent Reexam. at col. 3, ll. 47–48. Instead, it is claim 1 of the '352 Patent (not an asserted or contingent claim) that recites visual display elements, although even these are recited in a generic way. *Id.* at ¶ 80 (quoting '352 Patent at col. 31, ll. 4–28). Claim 1 recites "a graphical user interface means

17

1    for converting the pool of textual objects into a graphical view comprising: a means for forming a
2    box to graphically represent one or more of the textual objects in the pool." '352 Patent at col. 31,
3    ll. 22–25. Without any claims (as opposed to the specifications) reciting the elements of the
4    display technology, the Court cannot find the improved visual display an innovative concept
5    sufficient to survive *Alice* step two. *See CellSpin*, 927 F.3d at 1317 (counseling that plausible and
6    specific factual allegations are only sufficient "[a]s long as what makes the claims inventive is
7    recited by the claims"); *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329,
8    1338 (Fed. Cir. 2017) ("The main problem that Two-Way Media cannot overcome is that the
9    *claim*—as opposed to something purportedly described in the specification—is missing an
10   inventive concept."); *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328–29
11   (Fed. Cir. 2020) (rejecting plaintiff's contention that the "layered architecture" of the invention
12   provided an inventive concept where the claims did not specify this (or any) architecture).

Without something "significantly more" to transform the claims into a patent-eligible application of an abstract idea, the patents fail to recite an "inventive concept" under *Alice* step two.

## IV. MOTIONS TO FILE UNDER SEAL

Courts generally apply a "compelling reasons" standard when considering motions to seal documents. *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 678 (9th Cir. 2010) (quoting *Kamakana v. City & Cty. of Honolulu*, 447 F.3d 1172, 1178 (9th Cir. 2006)). "This standard derives from the common law right 'to inspect and copy public records and documents, including judicial records and documents.'" *Id.* (quoting *Kamakana*, 447 F.3d at 1178). "[A] strong presumption in favor of access is the starting point." *Kamakana*, 447 F.3d at 1178 (quotations omitted). To overcome this strong presumption, the party seeking to seal a judicial record attached to a dispositive motion must "articulate compelling reasons supported by specific factual findings that outweigh the general history of access and the public policies favoring disclosure, such as the public interest in understanding the judicial process" and "significant public events." *Id.* at 1178–79 (quotations omitted).

Records attached to nondispositive motions must meet the lower "good cause" standard of

1    Rule 26(c) of the Federal Rules of Civil Procedure, as such records "are often unrelated, or only

2    tangentially related, to the underlying cause of action." *Id.* at 1179–80 (quotation omitted). This

3    requires a "particularized showing" that "specific prejudice or harm will result" if the information

4    is disclosed. *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210–11 (9th

5    Cir. 2002); *see also* Fed. R. Civ. P. 26(c). "Broad allegations of harm, unsubstantiated by specific

6    examples of articulated reasoning" will not suffice. *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966

7    F.2d 470, 476 (9th Cir. 1992) (quotation omitted).

8        Because the parties move to file documents related to nondispositive motions (the motions

9    are attached to SRA's motion for leave to amend claim election and infringement contentions), the

10   Court will apply the lower good cause standard. The Court finds that the parties have provided

11   good cause for sealing portions of the various documents listed below because they contain

12   confidential business and proprietary information relating to the operations of Defendant

13   Facebook. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, No. 11-cv-01846-LHK, 2012 WL 6115623

14   (N.D. Cal. Dec. 10, 2012); *see also Agency Solutions.Com, LLC v. TriZetto Group, Inc.*, 819 F.

15   Supp. 2d 1001, 1017 (E.D. Cal. 2011); *Linex Techs., Inc. v. Hewlett-Packard Co.*, No. 13-cv-

16   0159-CW, 2014 WL 6901744 (N.D. Cal. Dec. 8, 2014). Specifically, the parties have identified

17   portions of the unredacted version of Facebook's opposition to SRA's motion to leave to file

18   amended claim election and infringement contentions and exhibits as containing confidential and

19   proprietary business information, mostly in the form of Facebook's proprietary source code. The

20   parties also narrowly tailor their requests to only cover the portions of the brief and exhibits that

21   include portions of source code directly or detail regarding Facebook's source code structure.

22   Accordingly, the Court finds good cause to grant the motions to seal. Dkt. Nos. 197, 212.

23       //

24       //

25       //

26       //

27       //

28       //

## V. CONCLUSION

The Court **GRANTS** Facebook's motion for judgment on the pleadings. Dkt. No. 205. The Court concludes that the asserted and contingent claims of the patents-in-suit fail at *Alice* steps one and two, and are thus invalid. The Court further **DENIES AS FUTILE** SRA's motion to amend infringement contentions, because the contingent claims meet the same fate as the asserted claims under section 101. Dkt. No. 198. Finally, the Court **GRANTS** the parties' motions to file under seal finding that the parties provide good cause to do so. Dkt. Nos. 197, 212. The Clerk is directed to enter judgment in accordance with this order in Defendant's favor and close the case.

**IT IS SO ORDERED.**

Dated: 9/9/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge