1

2

3

4

5

6

7

8

COOLEY LLP
HEIDI L. KEEFE (178960)
hkeefe@cooley.com
MARK R. WEINSTEIN (193043)
mweinstein@cooley.com
LOWELL D. MEAD (223989)
lmead@cooley.com
3175 Hanover Street
Palo Alto, CA 94304-1130
Telephone:    (415) 391-5400
Facsimile:    (415) 397-7188

Attorneys for Defendant
FACEBOOK, INC.

9

10

11

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

12

13

14

15

16

17

18

| | |
|---|---|
| SOFTWARE RIGHTS ARCHIVE, LLC,<br><br>                    Plaintiff,<br><br>        v.<br><br>FACEBOOK, INC.,<br><br>                        Defendant. | Case No. 4:12-cv-03970 HSG (TSH)<br><br>**FACEBOOK'S NOTICE OF MOTION AND MOTION FOR PARTIAL AWARD OF ATTORNEYS' FEES PURSUANT TO 35 U.S.C. § 285**<br><br>Judge:  Hon. Haywood S. Gilliam, Jr.<br>Date:    December 10, 2020<br>Time:   2:00 p.m.<br>Courtroom 2, 4th Floor |

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ........................................................................................... 1

II.   STATEMENT OF FACTS .............................................................................. 2

      A.    SRA Was Repeatedly Warned For Years on § 101 and § 285............................ 2

            1.    In May 2013, Facebook's Invalidity Contentions Explained that the Patents Are Invalid Under § 101............................................................. 3

            2.    In June 2014, the Supreme Court Issued *Alice*, Dooming SRA's Claims. ................................................................................................... 3

            3.    In October 2014, SRA Told The PTAB "These Claims Are Highly Abstract." ................................................................................................ 3

            4.    In March 2015, Facebook Advised SRA To Drop This Exceptional Case Because Its Patents Are Invalid Under § 101 and *Alice*..................... 4

            5.    In May 2016, the Federal Circuit Panel Discussed How To Dispose Of This Case That Was "Clearly a 101." ................................................. 5

            6.    In October 2016, SRA Started Its Multi-Year Campaign of Harassing the Federal Circuit, PTAB, and PTO Director. ........................ 5

            7.    In December 2016, Facebook Again Exhorted SRA to Drop This Exceptional Case Because the Patents are Invalid Under § 101............... 6

            8.    In October 2017, Facebook Told SRA For a Third Time to Drop The Case.................................................................................................. 6

            9.    In March 2018, Facebook Again Told SRA to Drop This Case, And SRA Responded By Threatening To Drive Up Facebook's Defense Costs To Attempt to Extract A Nuisance Settlement................................ 7

            10.   In April 2019, Facebook Again Told SRA to Drop Its Case. ................... 8

      B.    As Litigation Resumed in 2019, SRA Aggressively Sought to Expand This Case. ........................................................................................................ 9

III.  ARGUMENT ................................................................................................ 11

      A.    The Court May Award Fees In Exceptional Cases. .......................................... 11

      B.    This Is An Exceptional Case Warranting Fees Under § 285. ............................. 11

            1.    SRA's § 101 Position Was Exceptionally Weak. ..................................... 11

            2.    SRA Ignored Repeated Warnings For Years On § 101 and § 285............. 13

            3.    SRA Engaged In Years of Frivolous Attempts to Undermine the Federal Circuit's Invalidity Rulings............................................................ 14

            4.    After Litigation Resumed in 2019, SRA Continued Its Unreasonable Conduct. ............................................................................. 15

            5.    Facebook Seeks Only A Reasonable Portion of Its Fees Since the Issuance of *Alice* At Substantially Reduced Reasonable Rates. ............... 17

            6.    The Court Should Award Fees Now. ........................................................ 18

IV.   CONCLUSION ............................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alice Corp. v. CLS Bank Int'l*,
134 S. Ct. 2347 (2014) .................................................................................... *passim*

*Bancorp Servs. v. Sun Life Assur. Co. of Can.*,
687 F.3d 1266 (Fed. Cir. 2012) ............................................................................. 13

*Bilski v. Kappos*,
130 S. Ct. 3218 (2010) ......................................................................................... 13

*Blum v. Stenson*,
465 U.S. 886 (1984) ............................................................................................. 17

*Caron v. Lifestyle Crafts, LLC*,
No. CV-12-00124-PHX-NVW, 2013 WL 791287 (D. Ariz. Mar. 4, 2013) ............. 18

*Commil USA, LLC v. Cisco Sys., Inc.*,
135 S. Ct. 1920 (2015) ......................................................................................... 15

*Dealertrack, Inc. v. Huber*,
674 F. 3d 1315 (Fed. Cir. 2012) ............................................................................ 13

*Deep Sky Software, Inc. v. Southwest Airlines Co.*,
Case No. 10-cv-1234-CAB (KSC), 2015 WL 10844231 (S.D. Cal. Aug. 19,
2015) .................................................................................................................... 17

*Dynetix Design Sols., Inc. v. Synopsys Inc.*,
No. CV 11-05973 PSG, 2012 WL 6019898 (N.D. Cal. Dec. 3, 2012) ................... 16

*Elec. Power Grp., LLC v. Alstom S.A.*,
830 F.3d 1350 (Fed. Cir. 2016) ............................................................................ 10

*Finnavations LLC v. Payoneer, Inc.*,
C.A. No. 1:18-cv-00444-RGA, 2019 WL 1236358 (D. Del. Mar. 18, 2019) .......... 13

*Hilton v. Braunskill*,
481 U.S. 770 (1987) ............................................................................................. 19

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
876 F.3d 1372 (Fed. Cir. 2017) .................................................................... *passim*

*Large Audience Display Sys., LLC v. Tennman Prods., LLC*,
660 Fed. App'x 966 (Fed. Cir. 2016) .................................................................... 17

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

4 *Logic Devices, Inc. v. Apple Inc.*,
  No. C 13-02943 WHA, 2014 WL 6844821 (N.D. Cal. Dec. 4, 2014)......................................14

5 *Masalosalo by Masalosalo v. Stonewall Ins. Co.*,
6   718 F.2d 955 (9th Cir. 1983).................................................................................................19

7 *Microstrategy Inc. v. Crystal Decisions, Inc.*,
    586 F. Supp. 2d 256 (D. Del. 2008) ......................................................................................18
8

9 *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*,
    2012 U.S. Dist. LEXIS 5109 (N.D. Cal. Jan. 17, 2012) ...................................................17, 18
10

*My Health, Inc. v. ALR Techs., Inc.*,
11   Case No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221 (E.D. Tex. Dec. 19,
     2017) .............................................................................................................................13, 17
12

13 *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
     134 S. Ct. 1749 (2014).................................................................................................4, 11, 15

14 *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*,
15   840 F.2d 1565 (Fed. Cir. 1988).............................................................................................17

16 *Spitz Techs. Corp. v. Nobel Biocare USA LLC*,
     Case No. SACV 17-00660 JVS, 2018 WL 6016149 (C.D. Cal. Aug. 13, 2018) ...................19
17

18 *Sport Dimension, Inc. v. Coleman Co.*,
     Case No. CV 14-00438 BRO, 2015 WL 10013784 (C.D. Cal. June 4, 2015).........................18

19 *Tehrani v. Hamilton Med., Inc.*,
20   2001 U.S. Dist. LEXIS 26067 (C.D. Cal. Dec. 19, 2001) ......................................................18

21 *In re TLI Commc'ns LLC Patent Litig.*,
     823 F.3d 607 (Fed. Cir. 2016)...............................................................................................11
22

23 *Ultramercial, Inc. v. Hulu, LLC*,
     772 F.3d 709 (Fed. Cir. 2014)...............................................................................................15

24 *Yufa v. TSI Inc.*,
25   Case No. 09-cv-01315-KAW, 2014 WL 4071902 (N.D. Cal. Aug. 14, 2014).........................14

26

27

28

- iii -

# TABLE OF AUTHORITIES
## (continued)

Page(s)

**Statutes**

35 U.S.C.
  § 101 .................................................................................................................... *passim*
  § 285 .................................................................................................................... *passim*
  § 315(e)(2) ............................................................................................................... 8, 10

**Other Authorities**

Fed. R. Civ. P.
  Rule 12(c) ...................................................................................................................... 9
  Rule 54 ........................................................................................................................ 19
  Rule 54-5(a) ................................................................................................................. 18
  Rule 54-5(b)(2) ............................................................................................................ 17
  Rule 54(d)(2)(B) .......................................................................................................... 18

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**NOTICE OF MOTION**</u>

PLEASE TAKE NOTICE that on December 10, 2020 at 2:00 p.m., either telephonically as directed by the Court or in Courtroom 2, 4th Floor, United States District Court for the Northern District of California, Oakland Division, or at such other time, place, and manner as the Court may determine, before the Honorable Haywood Gilliam, Jr., defendant Facebook, Inc. ("Facebook") will move, and hereby does move the Court for an order awarding Facebook a reasonable portion of its reasonable attorney fees incurred as a result of this action pursuant to 35 U.S.C. § 285, to be compensated by plaintiff Software Rights Archive LLC ("SRA").

This motion is based on the following Memorandum of Points and Authorities, the pleadings on file in these actions, matters of which the Court may take judicial notice, and upon such other and further argument and evidence as the Court may permit.

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.     INTRODUCTION**

This is a rare exceptional case that stands out among all others, warranting an award of fees under § 285. SRA should have dropped this case years ago after its patents were gutted by the Patent Trial & Appeal Board ("PTAB"), Federal Circuit, and *Alice*. Despite years of warnings, SRA pressed forward, wasting the Court's, the PTAB's, and Facebook's time and resources.

Soon after filing this action in 2012, SRA selected its "best" 30 claims to assert. The PTAB instituted *inter partes* review ("IPR") on 27 of those claims. The Federal Circuit ultimately held that all 27 claims were invalid. Rather than accept the Federal Circuit's final ruling, SRA harassed the Federal Circuit, the PTAB, and the Director of the PTO with an extraordinary series of frivolous petitions and requests over the next several years that were all summarily rejected.

Critically, in addition to being invalid over the prior art, all of SRA's asserted claims suffered from the threshold defect of ineligibility under § 101. SRA's claims were highly questionable even before the Supreme Court issued *Alice* in June 2014. In the wake of *Alice*, SRA's claims were unquestionably doomed. In 2016, during the hearing on the appeal from the PTAB, a

1   Federal Circuit judge observed that this case was "clearly a 101."[1]  Indeed, SRA itself told the

2   PTAB that its claims were "highly abstract," a telling indicator of invalidity under § 101.[2]

3       This Court's recent § 101 invalidity ruling was thus inevitable, but the case never should

4   have proceeded this far.  For years after *Alice* issued, Facebook sent letter after letter advising SRA

5   to drop this case because the remaining claims were invalid under § 101, just as observed at the

6   Federal Circuit hearing, and Facebook would seek its fees under § 285.  In response, SRA never

7   identified any basis for eligibility under § 101.  Instead, SRA attempted to extract a nuisance

8   settlement by threatening to litigate these invalid patents "to the fullest extent" and threatening to

9   assert more patents—which it never did.[3]

10      When litigation reopened in early 2019, Facebook proposed to bring it to a quick conclusion

11  by invalidating the three remaining claims under § 101.  SRA, on the other hand, aggressively

12  sought to expand the litigation and drive up Facebook's defense costs.  SRA attempted to restart

13  this eight year old case with untimely new asserted claims and infringement contentions, and lodged

14  unripe motions to compel discovery, which violated this Court's orders and rules.

15      SRA's years of unreasonable conduct with clearly invalid claims make this case stand out

16  dramatically from a typical patent case.  A fees award would properly compensate Facebook and

17  deter similar conduct in the future.  Facebook reasonably seeks only a portion of its fees incurred

18  after the issuance of the *Alice* decision, consistent with on-point Federal Circuit precedent.

19  **II.     STATEMENT OF FACTS**

20      **A.     SRA Was Repeatedly Warned For Years on § 101 and § 285.**

21      SRA is a non-practicing entity backed by a private equity fund.[4]  SRA filed this action in

22  July 2012 alleging that Facebook infringed three related patents.[5]

23  _____

    [1] Dkt. No. 205-1.

24  [2] Dkt. No. 205-3 (Tr. 78:18-19).

25  [3] Ex. A at 1.

26  [4] SRA previously indicated that it was backed by Altitude Capital Partners, which characterized
    itself as a $250 million investment fund.  Facebook is not aware of any relevant subsequent
    change in ownership rights.  In a filing yesterday, SRA claimed to be a "small company" but did
27  not provide any evidence regarding its owners, access to capital, and resources.  Dkt. No. 233.

28  [5] Dkt. No. 1.

1

2

**1.      In May 2013, Facebook's Invalidity Contentions Explained that the Patents Are Invalid Under § 101.**

3

4

5

6

7

Pursuant to the Court's February 15, 2013 order,[6] SRA selected 30 claims to assert from the three patents-in-suit.[7] In May 2013, Facebook (jointly with its co-defendants at the time[8]) served its Invalidity Contentions.  Facebook explained that "[e]ach and every asserted claim is invalid under 35 U.S.C. § 101 and applicable case law authority" because the claims were directed to abstract ideas and did not recite any patent-eligible invention.[9]

8

9

10

11

In July 2013, Facebook (with its co-defendants) filed IPR petitions challenging the validity of SRA's 30 asserted claims over certain prior art.  In September 2013, the Court stayed this case pending IPR.[10]  The PTAB instituted IPR on 27 of SRA's selected 30 claims, leaving three asserted claims from one patent that were not subject to IPR.

12

13

The asserted patents expired in 2013, limiting any possible infringement and damages claims to the pre-expiration time period that ended more than seven years ago.

14

**2.      In June 2014, the Supreme Court Issued *Alice*, Dooming SRA's Claims.**

15

16

17

18

19

20

In June 2014, the Supreme Court issued its landmark *Alice* decision.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  *Alice* made clear what Facebook had already asserted in its contentions, that "merely requiring generic computer implementation" is not sufficient under § 101 to transform an "abstract idea" into a patent-eligible invention.  *Id.* at 2352.  In the wake of *Alice*, the Federal Circuit and district courts invalidated hundreds of computer-implemented patent claims that failed to provide concrete eligible inventions—like SRA's asserted claims here.

21

22

**3.      In October 2014, SRA Told The PTAB "These Claims Are Highly Abstract."**

23

24

The PTAB conducted oral argument on the IPRs in October 2014.  During that hearing,

25

26

27

28

[6] Dkt. No. 41.  The case was previously assigned to the Hon. Judge Ronald M. Whyte.

[7] Dkt. No. 205-2.

[8] The other two defendants, LinkedIn and Twitter, were subsequently dismissed.

[9] Ex. B at 41.

[10] Dkt. No. 82.

1   SRA admitted that "these claims are highly abstract."[11]

2       **4.      In March 2015, Facebook Advised SRA To Drop This Exceptional Case**
3       **Because Its Patents Are Invalid Under § 101 and *Alice*.**

4       In early 2015, the PTAB issued its final decisions in the instituted IPRs.[12]   On March 5,

5   2015, Facebook sent a letter to SRA's counsel explaining why SRA's case was an exceptional case

6   under 35 U.S.C. § 285 and *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749,

7   1756 (2014).  Facebook explained:

8           **SRA and its capital backers should appreciate that proceeding**
            **with litigation is not an "upside-only" proposition.** There is a
9           substantial likelihood that, the further SRA presses with litigation, the
            more money SRA and its investors will be forced to pay out of pocket
10          in Defendants' attorneys fees and costs.[13]

11  Facebook's letter further discussed in detail how "SRA's litigation stands out from others with

12  respect to the substantive weakness of SRA's litigating position, as discussed further below, and

13  SRA would be unreasonable to pursue further litigation."[14]   The first reason Facebook explained

14  was that the patents are invalid under § 101:

15          **The asserted claims are clearly invalid under Section 101 in view**
            **of the case law precedent of the Supreme Court, Federal Circuit,**
16          **and Northern District of California (including Judge Whyte).** The
            claims are directed to abstract ideas implemented in nothing more than
17          a generic and conventional computer environment (to the extent any
            computer is even required), which does not qualify for patent-
18          eligibility.[15]

19  The letter attached highlighted copies of numerous § 101 decisions so that SRA could "consider

20  them in determining whether it desires to proceed with this litigation and incur further liability for

21  Defendants' attorneys fees and costs under Section 285."[16]   Facebook also explained in detail why

22  SRA's case was further meritless because SRA lacked any good faith basis for any infringement

23

24  [11] Dkt. No. 205-3 (Tr. 78:18-19).

25  [12] *See* Dkt. No. 157 at 2.

26  [13] Ex. C at 1 (emphasis added).

27  [14] *Id*.

28  [15] *Id*. at 2 (emphasis added).

    [16] *Id*. at 2 & 6 *et seq*.

theory and any non-trivial damages claim on these patents that expired in 2013.[17]   SRA never responded to the letter.

**5.      In May 2016, the Federal Circuit Panel Discussed How To Dispose Of This Case That Was "Clearly a 101."**

The IPRs proceeded to appeal.  At oral argument, the Federal Circuit panel asked whether the patents had been challenged under § 101 in prior litigation against Google, which they had not.[18]  The panel then discussed whether the Federal Circuit could invalidate the claims *sua sponte* under § 101 because, as Judge Haldane Robert Mayer observed, "it's clearly a 101."[19]   Neither SRA nor any other judge stated any disagreement with that observation.

The Federal Circuit held that every claim at issue on appeal was invalid (affirming the PTAB on the claims the PTAB found invalid, and reversing the PTAB for the few claims the PTAB had found were not proven invalid).  The Federal Circuit did not address § 101 in its decisions, as § 101 is not an available basis for invalidating claims in IPR.

**6.      In October 2016, SRA Started Its Multi-Year Campaign of Harassing the Federal Circuit, PTAB, and PTO Director.**

After the Federal Circuit decisions, SRA engaged in a years-long campaign of baseless requests to the Federal Circuit and Patent Office in a misguided effort to avoid the Federal Circuit's mandate.  All of SRA's requests were summarily denied.  The Court summarized the procedural history in its May 10, 2019 Order, which is excerpted below for convenient reference.

> On October 12, 2016, SRA filed a combined petition for rehearing, which the Federal Circuit denied. SRA then informed the PTAB that it believed there were still remaining issues for the PTO to adjudicate. The PTAB, on December 2, 2016, said it would issue "any necessary orders in due course," and that no further briefing or conference calls were necessary at that time. No activity occurred until October 19, 2017, when the PTAB indicated it would take no further action.

> SRA then filed requests for rehearing regarding the PTAB's October 19, 2017 decision, which the PTAB denied. On February 20, 2018, Plaintiff filed a petition for writ of mandamus to the Federal Circuit, requesting that the Federal Circuit reverse the PTAB's order denying

---

[17] *Id*. at 2-4.

[18] D.I. 205-1 at 1.

[19] *Id*. at 2.

the requests for rehearing. The Federal Circuit denied the petition on February 27, 2018. SRA petitioned to the Director of the PTO on May 30, 2018, requesting that the Director instruct the PTAB to issue a final written decision with respect to claims 26, 28, and 31 of the '571 Patent, on which the PTAB earlier declined to institute IPR proceedings.

The parties' latest position is that per the PTO website, an IPR certificate was issued for the '571 patent on June 6, 2018, but the parties state they still have not received the certificate. Further, SRA's latest petition was dismissed on March 7, 2019, although the parties aver they have not received a copy of that decision either.  At the hearing, SRA represented that it intended to file a complaint against the PTO based on its alleged mishandling of SRA's petition, and therefore requested to continue the stay for approximately six more months. [20]

### 7.   In December 2016, Facebook Again Exhorted SRA to Drop This Exceptional Case Because the Patents are Invalid Under § 101.

In December 2016, Facebook again advised SRA that it should drop this exceptional case:

Following the Federal Circuit's decisions, SRA does not have a reasonable basis to proceed with this litigation, for at least the reasons articulated in Defendants' March 5, 2015 correspondence. SRA's remaining asserted claims are invalid under Section 101 and invalid over the prior art, and SRA has no plausible infringement theory. Even if SRA had any reasonable liability theory, it has no worthwhile damages claim, as noted in Defendants' correspondence.

Furthermore, this is an exceptional case pursuant to Section 285, as noted in Defendants' correspondence and underscored by the Federal Circuit's decisions.  However, in the interest of judicial economy and to avoid further costs of litigation, Defendants are willing to discuss settlement of their claims for attorneys' fees and their costs incurred in the district court.

Please confirm that SRA will not further pursue this litigation, and please let us know if SRA would like to discuss settlement of Defendants' claims for fees and costs. [21]

SRA did not respond.

### 8.   In October 2017, Facebook Told SRA For a Third Time to Drop The Case.

In October 2017, after the Patent Office denied SRA's request to reopen the IPRs, Facebook yet again requested that SRA stop pursuing this meritless case:

---

[20] Dkt. No. 157 at 2-3 (citations omitted); *see also* Ex. F (letter to SRA summarizing history).

[21] Ex. D.

Now that the Patent Trial and Appeals Board has denied your request to reopen the IPR proceedings, we write one final time to urge SRA to dismiss with prejudice its remaining claims against Facebook and Twitter. As a reminder of some of the many reasons why SRA's claims are meritless, and why Defendants will be entitled to substantial attorneys' fees and costs under 35 U.S.C. § 285 if you pursue them, we attach our previous letters of March 5, 2015 and November 23, 2016. I'm sure that you also recall Judge Mayer's comments during the May 4, 2016 Federal Circuit argument, in which he asked whether the Court could invalidate the patents under 35 U.S.C. § 101, even though that issue was not presented on appeal, because they are directed to unpatentable subject matter.

Defendants are willing to forego pursuing their attorneys' fees and costs under § 285 if SRA dismisses this action with prejudice within one week. But if SRA elects to continue, forcing Defendants to expend even more resources on this meritless lawsuit, Defendants will seek the fees and costs they are entitled to under law, which are already quite substantial.[22]

Again, SRA did not respond.

### 9. In March 2018, Facebook Again Told SRA to Drop This Case, And SRA Responded By Threatening To Drive Up Facebook's Defense Costs To Attempt to Extract A Nuisance Settlement.

In March 2018, as the parties worked on a status report, Facebook again reiterated to SRA:

Please confirm that SRA will not take any further action with respect to the IPRs.

Also please confirm that SRA will not further pursue this meritless litigation in the district court, per Defendants' recent correspondence. As a reminder, if SRA insists on pressing forward, Defendants intend to seek appropriate relief against SRA and/or its counsel including attorneys' fees and costs.[23]

This time, SRA responded. But SRA did not identify any alleged basis for patent-eligibility under § 101. Nor did SRA identify any substantive basis for an infringement theory on the remaining three claims. Instead, SRA threatened to press forward with its case "to the fullest extent" and assert additional patents for the purpose of extracting a nuisance settlement:

We intend to pursue SRA's claims against your clients to the fullest extent. . . . We also are likely to assert more patents against your clients. If you want to discuss this issue further on the phone and address your liability on SRA's remaining claims and patents, we are amenable to further discussion. We are happy to discuss a reasonable

---

[22] Ex. E.

[23] Ex. A at 1.

1
2

> licensing agreement with your client that reflects the narrowed claim set in view of the affirmation of validity of certain claims by the PTO.[24]

3    SRA never identified any of the alleged additional patents it threatened to assert.  Facebook

4    declined to pay for a license to SRA's invalid patents that Facebook had never infringed.

5    **10.    In April 2019, Facebook Again Told SRA to Drop Its Case.**

6    Due to SRA's refusal to accept Facebook's warnings, activity in this Court resumed in early

7    2019.  The Court scheduled a case management conference for April 30, 2019.  With the resumption

8    of litigation looming, Facebook (along with its then co-defendant Twitter) made a final attempt to

9    persuade SRA to reconsider proceeding with this meritless case.  Facebook's letter summarized the

10   history of the case, including SRA's years of frivolous filings and requests attempting to undermine

11   the Federal Circuit's mandate.[25]  Facebook explained that although the case was clearly exceptional

12   under § 285, Facebook would nevertheless agree to a walk-away:

13
14
15
16

> I write to request that Software Rights Archive, LLC ("SRA") immediately dismiss with prejudice its pending litigation against Facebook and Twitter. A brief history of this litigation illustrates why it should proceed no further. . . . SRA's continued litigation of the asserted patents has long since crossed the line from meritless to harassing. . . . [P]ursuant to Section 285, the district court may award attorneys' fees . . .

17
18
19

> The remaining asserted claims are manifestly invalid under at least Sections 101 and 103.  Indeed, at oral argument on appeal from the PTAB's final written decisions, Judge Mayer asked on the record whether the Federal Circuit panel should *sua sponte* examine the patents for ineligibility under 35 U.S.C. § 101 because "this is clearly a 101." . . .

20
21

> We write to give SRA one final opportunity to dismiss the action without prejudice, in exchange for which, Defendants will not pursue sanctions. We hope to hear from you within one week from the date of this letter, after which Defendants' offer expires.[26]

22   SRA did not agree to drop this case.  On the contrary, it sought to prolong and expand it.  At the

23

---

24   [24] *Id.*  SRA also incorrectly asserted that for the remaining three asserted claims, "validity has

25   been established by the PTO" and "[a]ll of your prior art defenses have already failed with respect to those claims."  *Id.*  Those assertions were false.  The PTAB denied institution of IPR on those

26   three claims only on a specific basis presented in the IPR petition, which left fully intact all of Facebook's prior art invalidity defenses in the litigation with no estoppel effect.  *See* 35 U.S.C. § 315(e)(2) (estoppel arises only if an IPR proceeds to a final written decision on the merits).

27   [25] Ex. F.

28   [26] *Id.*.

April 30, 2019 hearing, SRA told the Court that since all of SRA's efforts at the Federal Circuit and Patent Office had failed, SRA planned to file a new district court lawsuit against the Patent Office. SRA asked the Court to keep the case stayed in the meantime. The Court rejected that gambit and lifted the stay, directing the parties to submit a case management statement.[27]

### B.     As Litigation Resumed in 2019, SRA Aggressively Sought to Expand This Case.

The parties proposed very different approaches to the post-stay litigation. Facebook focused on a threshold dispositive issue: invalidity under § 101. The PTAB had already invalidated 27 of SRA's 30 asserted claims, and the remaining claims were invalid under § 101. As such, Facebook proposed to promptly file a § 101 invalidity motion to quickly end this case.[28]

SRA, by contrast, aggressively sought to undo the streamlining of this case by the PTAB and Federal Circuit, expand the scope of litigation and discovery, and drive up Facebook's defense costs. In a 19-page case management statement, SRA set forth a litany of baseless discovery complaints, requested that the Court immediately compel Facebook to produce discovery including source code, and proposed a self-serving schedule for SRA to seek leave to assert numerous additional claims and amend its infringement contentions.[29]

The Court rejected SRA's improper requests for relief and entered a case schedule on May 21, 2019.[30] The Court also reminded SRA that any requested relief would need to comply with the Court's standing orders and local rules.[31]

On May 31, 2019, Facebook filed its promised § 101 motion under Rule 12(c).[32] However, rather than respond with its § 101 position on the merits, SRA again sought to expand the scope of the case and drive up Facebook's defense costs. First, on June 14, 2019, SRA moved to amend its complaint with a stated intent of mooting Facebook's Rule 12(c) motion.[33] SRA could have

---

[27] Dkt. No. 156; Dkt. No. 157 at 3.

[28] Dkt. No. 158 at 15-16.

[29] Dkt. No. 158.

[30] Dkt. No. 159.

[31] *Id*. at 2.

[32] Dkt. No. 160.

[33] Dkt. Nos. 164, 165.

1  prepared its amended complaint at any time earlier, but waited until after it saw Facebook's § 101

2  motion.  After briefing and a hearing, the Court granted SRA leave to file its amended complaint,

3  which mooted Facebook's § 101 motion.[34]

4      Next, on August 30, 2019, SRA filed an improper motion to compel Facebook to provide

5  discovery (that Facebook had already provided) and to impose sanctions on Facebook.[35]  SRA did

6  not meet and confer with Facebook on any of the requested relief, directly contravening the Court's

7  procedures despite the Court's recent admonition to obey its rules and orders.  Facebook opposed

8  the motion both for its procedural failure and its lack of substantive merit.[36]  The Court denied

9  SRA's motion because SRA had failed to properly meet and confer.[37]

10     Pursuant to an updated case schedule[38], on September 6, 2019 SRA moved to amend its

11  infringement contentions and add nine asserted claims.[39]   Finally, on September 20, 2019,

12  Facebook filed its renewed § 101 motion challenging all of the currently asserted and "contingent"

13  claims.[40] At step one of the *Alice* test, Facebook explained how the challenged claims fall squarely

14  within the "familiar class of claims" for collecting, analyzing, and displaying information that

15  routinely fails step one.[41]   The patents proposed ideas for searching and analyzing information

16  using direct and indirect relationships between items, such as legal authority citations—a

17  fundamental concept familiar to any lawyer who has written a brief that cites a particular case,

18  which in turn cites other cases.[42]   The patents did not purport to improve the operation of any

19  underlying computer.[43]   At step two of the *Alice* test, Facebook explained how the claims recite

20

21  [34] Dkt. Nos. 173, 175, 178.

    [35] Dkt. No. 192.

22  [36] Dkt. No. 202.

23  [37] Dkt. No. 210.

    [38] Dkt. No. 187.

24  [39] Dkt. No. 198.

25  [40] Dkt. No. 205.

26  [41] *Id*. at 12-14 (quoting *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016)).

27  [42] *Id*. at 10-11.

28  [43] *See id*., *passim*.

only a "wholly generic computer implementation" with "purely functional" method steps that fail to provide a patent-eligible inventive concept under *Alice* and its progeny.[44]

SRA's opposition to the § 101 motion did not identify any concrete, patent-eligible invention set forth in the language of the claims—nor could it, because none existed.[45]

After briefing and oral argument, the Court granted Facebook's motion and issued a detailed opinion explaining how the challenged claims (both asserted and "contingent" claims) are invalid under § 101.[46]

## III.   ARGUMENT

### A.   The Court May Award Fees In Exceptional Cases.

Section 285 states: "The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285.  Facebook is the prevailing party in this case.[47]

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756. An exceptional case under § 285 is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id*.

A district court may consider "considerations of compensation and deterrence" in its discretion as part of a "nonexclusive list of factors . . . when determining whether to award fees under § 285." *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378 (Fed. Cir. 2017) (citation and internal quotations omitted).

### B.   This Is An Exceptional Case Warranting Fees Under § 285.

#### 1.   SRA's § 101 Position Was Exceptionally Weak.

This was not a close case on § 101.  A Federal Circuit panel judge observed that this case

---

[44] *Id*. at 15-17 (citing *Alice*, 134 S. Ct. at 2358-60; *In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 612 (Fed. Cir. 2016)).

[45] Dkt. No. 215.

[46] Dkt. No. 230.

[47] Dkt. Nos. 230, 231.

is "clearly a 101" with no dispute raised by SRA or anyone else present at the hearing—the only question was whether the panel could dispose of these invalid patents *sua sponte*.  SRA also told the PTAB that its claims are "highly abstract."  This Court agreed that the claims are impermissibly abstract.  At *Alice* step one, the Court observed that "[t]he claims asserted here are directed to precisely what the Federal Circuit has held to be an abstract idea."[48]  At *Alice* step two, the Court determined that nothing in the asserted claims recited significantly more than the abstract idea itself in order to transform the claims into a patent-eligible invention.[49]  Invalidity under § 101 was clear all along after *Alice*.

The Federal Circuit's decision in *Inventor Holdings* is instructive.  In that case, the district court reasoned that "following the *Alice* decision, [the patentee's] claims were objectively without merit" and that an award of fees would properly "deter wasteful litigation in the future."  876 F.3d at 1377.  The Federal Circuit found that the district court properly awarded fees "based on the weakness of [the plaintiff's] § 101 arguments and the need to deter similarly weak arguments in the future."  *Id*. at 1377-78.  In particular, the claims at issue were "manifestly directed to an abstract idea." *Id*. at 1378.  Likewise, here, SRA's claims in this case were "clearly a 101" and "precisely" the type of claim the Federal Circuit consistently holds invalid.  Furthermore, in this case as in *Inventor Holdings*, "the only components disclosed in the specification for implementing the asserted method claims are unambiguously described as 'conventional'" and therefore "do not supply an inventive concept."  *Id*.  "[H]ere, as in *Alice,* the patentee is attempting to broadly monopolize an abstract idea as implemented using generic computer technology."  *Id*. at 1379.

During the meet and confer on this motion, SRA suggested that § 101 is an unsettled area of law.  But regardless of whether the margins of § 101 law are debatable, the claims at issue in this case are "clearly a 101" under well-settled precedent.  The claims recited nothing significantly more than ideas for collecting, analyzing, and displaying information, borrowing from the fundamental concept of case citations in legal research, and implementing the ideas using only generic and

---

[48] *Id*. at 8.

[49] *Id*. at 15-18.

conventional components.  While "it was and is sometimes difficult to analyze patent eligibility . . . there is no uncertainty or difficulty in applying the principles set out in *Alice* to reach the conclusion that [these] claims are ineligible." *Inventor Holdings*, 876 F.3d at 1379.  As this Court observed, SRA's asserted claims fell precisely in line with claims that have "universally been found to be unpatentable under *Alice*" in dozens of on-point decisions.  *My Health, Inc. v. ALR Techs., Inc.*, Case No. 2:16-cv-00535-RWS-RSP, 2017 WL 6512221, at *4-5 (E.D. Tex. Dec. 19, 2017) (granting § 285 fees award, finding that "the weakness in My Health's § 101 position is by itself a sufficient basis for finding the cases exceptional.").  "This was not a 'borderline case' with an unpredictable result.  Any reasonable patent attorney with an understanding of Section 101 law could have predicted the outcome." *Finnavations LLC v. Payoneer, Inc.*, C.A. No. 1:18-cv-00444-RGA, 2019 WL 1236358, at *2 (D. Del. Mar. 18, 2019) (granting § 285 fees award).

### 2.    SRA Ignored Repeated Warnings For Years On § 101 and § 285.

SRA further made this case exceptional by forging ahead through years of red flags warning SRA that its patents are invalid under § 101 and that this case was exceptional under § 285.

In 2013, Facebook's invalidity contentions notified SRA that every asserted claim was invalid under § 101 in view of then-controlling Federal Circuit case law.[50]  As Facebook explained, the Federal Circuit had made clear in cases such as *Bilski* and *Dealertrack* that, for example, "[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible."[51]  As such, SRA's "claims were dubious even before the *Alice* decision in light of, for example, *Dealertrack* and *Bilski*."[52]  *Inventor Holdings*, 876 F.3d at 1379 (internal quotations omitted).

The Supreme Court issued *Alice* in June 2014, dooming SRA's claims.  Over the following five years, SRA was repeatedly warned that it had no basis to proceed and may be liable for fees.  In early 2015, after the PTAB invalidated most of SRA's asserted claims in early 2015, Facebook

---

[50] Ex. B at 41.

[51] *Id.* (quoting *Dealertrack, Inc. v. Huber*, 674 F. 3d 1315, 1333 (Fed. Cir. 2012)).

[52] *See id.* (citing *Dealertrack*, 674 F. 3d at 1333; *Bilski v. Kappos,* 130 S. Ct. 3218 (2010); *Bancorp Servs. v. Sun Life Assur. Co. of Can.*, 687 F.3d 1266, 1275-81 (Fed. Cir. 2012).).

warned SRA that it should drop the case or risk fees under § 285 because its claims were invalid under *Alice* and its Federal Circuit progeny, with highlighted copies of on-point cases attached to Facebook's letter.  In May 2016, the Federal Circuit panel discussed this "clearly a 101" case without a contrary word from SRA or anyone else.  In at least December 2016, October 2017, March 2018, and April 2019, Facebook again warned SRA in correspondence that SRA's patents were invalid under § 101 and its case exceptional under § 285.

It is difficult to imagine a case that would stand out from others more than this one, where SRA ignored warning after warning on § 101, year after year, including from the Federal Circuit itself.  *Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 WL 6844821, at *4-5 (N.D. Cal. Dec. 4, 2014) (awarding fees following summary judgment of invalidity due to the "unreasonable manner" in which the case was litigated, including that plaintiff ignored "repeated warnings about the invalidity" of the only asserted claim); *Yufa v. TSI Inc.*, Case No. 09-cv-01315-KAW, 2014 WL 4071902, at *3-5, 8 (N.D. Cal. Aug. 14, 2014) (finding plaintiff's "continued prosecution of th[e] action … objectively unreasonable" and awarding attorneys' fees after defendant showed in discovery that plaintiff's infringement theory was meritless).

In addition to the repeated warnings it received, SRA independently had a "responsibility to reassess its case in view of new controlling law."  *Inventor Holdings*, 876 F.3d at 1379 (citation omitted).  There is no evidence of record that during the years after *Alice* issued SRA developed any good-faith position as to how its claims might still be valid.  Not once in those five years did SRA ever tell Facebook how the asserted claims were allegedly patent-eligible under § 101.  On the contrary, SRA itself told the Patent Office that its claims were "highly abstract"—a telling sign of invalidity under § 101.  As such, the Court may properly award fees "based on [SRA's] failure to reassess the weakness of its case under *Alice*."  *Id.* at 1379-80.

### 3. SRA Engaged In Years of Frivolous Attempts to Undermine the Federal Circuit's Invalidity Rulings.

After the Federal Circuit held invalid every claim that was at issue in the IPRs, SRA engaged in its extraordinary multi-year campaign to undermine the Federal Circuit's mandate.  For two-plus years, as Facebook repeatedly warned SRA that this case was a dead end, SRA bombarded the

14

Federal Circuit, PTAB, and the Director of the PTO with one baseless petition and request after another—all of which were summarily denied.  SRA's extraordinary harassment of these tribunals and officers presents another reason this case stands out from others as exceptional under § 285. *Octane Fitness*, 134 S. Ct. at 1756-57 & n.6 ("District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances," including for purposes of deterrence and where "a party's unreasonable conduct — while not necessarily independently sanctionable — is nonetheless so 'exceptional' as to justify an award of fees").

### 4. After Litigation Resumed in 2019, SRA Continued Its Unreasonable Conduct.

After ignoring years of warnings about its § 101 and § 285 problems, SRA made clear its motivation for pressing forward:  it wanted to extract a nuisance settlement.  Rather than reasonably reassess and drop the remainder of its meritless case in the wake of *Alice*, SRA threatened to press this litigation "to the fullest extent," including threatening to assert more patents (which it never did), for the explicit purpose of attempting to extract a nuisance settlement payment from Facebook.[53]  This is precisely the type of unreasonable litigation conduct that § 285 is intended to deter.  *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1930 (2015) (noting that § 285 gives courts "the authority and responsibility to ensure frivolous cases are dissuaded" and that non-practicing entities often "go after defendants for money, even when their claims are frivolous").

SRA's unreasonable conduct continued after this case reopened in early 2019.  SRA faced a choice.  Given its serious § 101 problem, SRA could have reasonably agreed with Facebook to resolve the threshold § 101 issue on the three remaining claims at the outset, thereby saving the parties and Court substantial resources.  *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718-720 (Fed. Cir. 2014) (Mayer, J., concurring) (advocating for resolving § 101 as a threshold issue given that "[t]he scourge of meritless infringement claims has continued unabated for decades due, in no small measure, to the ease of asserting such claims and the enormous sums required to defend

---

[53] Ex. A at 1.

against them"); *Dynetix Design Sols., Inc. v. Synopsys Inc.*, No. CV 11-05973 PSG, 2012 WL 6019898, at *3 (N.D. Cal. Dec. 3, 2012) ("Like all patent cases, this case must narrow as it moves forward, not expand.").

Instead, SRA aggressively attempted to expand the litigation and impose defense costs on Facebook. SRA made good on its prior threat to press the case "to the fullest extent," presumably hoping to extract a cost-of-litigation settlement. At the outset, SRA sought to abuse a case management statement as an improper motion to attempt to compel discovery and set self-serving motion briefing schedules; the Court rejected those requests, reminding SRA to follow the Court's rules and orders. SRA then filed an improper motion to compel discovery and impose sanctions without conducting any meet and confer—violating the Court's requirements—which the Court summarily denied. SRA also sought a do-over on its selection of asserted claims, but failed to show any new good cause to do so—indeed, SRA's request was based primarily on source code that Facebook had produced *six years earlier in January 2013*, eight months before the case was stayed in September 2013, with hardly any source code review after the stay was lifted in April 2019.[54]

An award of fees here is particularly appropriate to deter similar future conduct. *Inventor Holdings*, 876 F.3d at 1377-78 (affirming fee award for purposes of deterrence). When ignoring year after year of warnings on § 101 and § 285, SRA and its backers presumably assumed that this Court would not grant a fees award, leaving this case as an "upside-only" proposition with SRA's counsel likely engaged on a full or partial contingency basis. Facebook respectfully requests that the Court deter this type of pernicious "nothing to lose" rationale. Indeed, SRA has indicated that it plans to appeal this Court's thorough and well-reasoned § 101 ruling, forcing Facebook to incur additional defense costs on appeal. *Inventor Holdings*, 876 F.3d at 1380 (awarding fees for § 101 appeal where there were "obvious issues" with § 101 invalidity that the plaintiff "should have recognized post-*Alice*, and these issues persisted throughout the § 101 appeal").

---

[54] Dkt. No. 198.

**5.      Facebook Seeks Only A Reasonable Portion of Its Fees Since the Issuance of *Alice* At Substantially Reduced Reasonable Rates.**

To avoid disputes regarding the reasonableness of the requested fee award, this motion requests a fee award that is much lower than Facebook is entitled to seek under supporting authority and substantially less than Facebook's actual applicable fees expenditure.[55]

First, Facebook seeks fees only for work performed after *Alice* issued in June 2014, not for the entire case since its July 2012 inception or for the period after Facebook disclosed its § 101 invalidity position in May 2013.[56]   *Inventor Holdings*, 876 F.3d at 1380 (affirming district court for awarding fees and "confining the award to fees accrued after the *Alice* decision issued.").

Second, Facebook seeks fees only at a market rate reported by the American Intellectual Property Law Association ("AIPLA") for 2014, which is dramatically lower than the actual standard rates for the attorneys who worked on this case from 2014 through 2019.[57]   *Large Audience Display Sys., LLC v. Tennman Prods., LLC*, 660 Fed. App'x 966, 972-73 (Fed. Cir. 2016) (approving of lodestar method to calculate reasonable fees by "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate") (*quoting Blum v. Stenson*,

---

[55] *See* Declaration of Lowell D. Mead ("Mead Decl."), ¶¶ 2-7.  Facebook would be pleased to submit the underlying time records for *in camera* review if directed by the Court.  *See* Civ. L.R. 54-5(b)(2).

[56] Mead Decl., ¶ 2.  The fees include reasonable time spent working on the IPRs and Federal Circuit appeals necessarily caused by SRA refusing to drop this case.  *Id.*, ¶¶ 2-3.  The Court stayed this litigation pending IPR in 2013, which effectively served to "replace the district court litigation with the [Patent Office] proceedings" after that time.  *PPG Indus., Inc. v. Celanese Polymer Specialties Co.*, 840 F.2d 1565, 1568-69 (Fed. Cir. 1988) (reversing district court that declined to award fees under § 285 for Patent Office invalidity proceedings conducted while district court litigation was stayed); *My Health*, 2017 WL 6512221, at *6 (awarding § 285 fees against patentee, including fees accused infringer expended for IPR petitions because the pursuit of IPR was necessarily caused by plaintiff's initiation of lawsuit); *Deep Sky Software, Inc. v. Southwest Airlines Co.*, Case No. 10-cv-1234-CAB (KSC), 2015 WL 10844231, at *2-3 (S.D. Cal. Aug. 19, 2015) (awarding fees incurred in reexamination that invalidated patent).

[57] This motion applies the median (midpoint) hourly rates reported by AIPLA for the San Francisco Bay Area market for the year 2014 for intellectual property practitioner law firm partners ($530) and associates ($425).  Mead Decl., ¶ 4.  Those rates are lower than the average (mean) reported hourly rates for 2014, which were $651 (partners) and $463 (associates), and much lower still than the actual standard rates for Facebook's attorneys on this case for 2014, whose rates also substantially increased from 2014 to 2019.  Mead Decl., ¶¶ 4-5.  *See Monolithic Power*, 2012 U.S. Dist. LEXIS 5109, at *9 (citing with approval "two recent cases from this district in which fees were awarded based on rates of $650 for partners, $500 for associates and $150 for paralegals in the San Francisco Bay Area") (citations omitted).

---

465 U.S. 886, 888 (1984)); *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, 2012 U.S. Dist. LEXIS 5109, at *9 (N.D. Cal. Jan. 17, 2012) (relying on AIPLA report data).

Third, Facebook does not seek its recoverable fees for work by paralegals and other non-attorney timekeeper professionals, which totals over 200 hours.[58]  *Tehrani v. Hamilton Med., Inc.*, 2001 U.S. Dist. LEXIS 26067, at *8 (C.D. Cal. Dec. 19, 2001) (noting that "the cost of support staff is recoverable as a part of reasonable attorneys fees" under § 285).  Finally, Facebook does not seek its recoverable fees incurred in connection with the present motion.  *Microstrategy Inc. v. Crystal Decisions, Inc.*, 586 F. Supp. 2d 256, 262 (D. Del. 2008) (noting that a § 285 fees award may include time preparing the fee application and briefing); *Caron v. Lifestyle Crafts, LLC*, No. CV-12-00124-PHX-NVW, 2013 WL 791287, at *3 (D. Ariz. Mar. 4, 2013) (same).

In sum, the requested fees reasonably total $580,339 for extensive work in this three-patent case in four IPRs, Federal Circuit appeals from the IPRs, and in this Court[59] which is a small fraction of the typical multi-million dollar defense costs for a patent case.[60]

### 6.    The Court Should Award Fees Now.

The Court denied SRA's request to postpone fees and costs determinations until after an appeal.[61]  In the event SRA re-raises its request, SRA fails to show good cause to depart from the usual deadline set by Federal Rule of Civil Procedure 54(d)(2)(B) and Civil Local Rule 54-5(a).  "[T]he weight of authority is that the usual course is for the Court to consider attorneys' fees promptly after the merits decision rather than stay a motion for attorneys' fees until resolution of the appeal."  *Sport Dimension, Inc. v. Coleman Co.*, Case No. CV 14-00438 BRO (MRWx), 2015 WL 10013784, at *3 n.1 (C.D. Cal. June 4, 2015) (quotation marks and citation omitted).  Courts consider four factors: (1) "whether the stay applicant has made a strong showing that he is likely to succeed on the merits;" (2) "whether the applicant will be irreparably injured absent a stay;" (3)

---

[58] Mead Decl. ¶ 2.

[59] *See* Dkt. Nos. 150-229 (reflecting extensive post-stay litigation activity in 2019).

[60] *See* Mead Decl., ¶ 4.  Alternatively, fees accruing only after SRA received Facebook's first § 285 notice letter in early March 2015 would total $333,256.50.  *Id.*, ¶ 6.

[61] Dkt. Nos. 233, 234.

1   "whether issuance of the stay will substantially injure the other parties interested in the proceeding;"

2   and (4) "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987).

3   The *Hilton* factors do not support a stay here. SRA cannot make a "strong showing" that

4   the Federal Circuit is likely to reverse this Court's ruling on § 101 invalidity. This case has been

5   "clearly a 101" since *Alice*, with claims of "precisely" the type the Federal Circuit consistently

6   holds invalid. This Court's § 101 ruling is correct. Nor can SRA show that it will be "irreparably

7   injured absent a stay." The patents expired in 2013. Any potential alleged infringement and accrual

8   of damages ceased seven years ago. Nor is there any public interest in letting SRA avoid a fees

9   motion at this time. SRA was a vehicle for a $250 million investment fund to attempt to extract

10  money from Facebook by asserting invalid, expiring patents. Facebook warned SRA more than

11  five years ago that since the patents are invalid under § 101 and *Alice*, "proceeding with litigation

12  is not an 'upside-only' proposition" and "[t]here is a substantial likelihood that, the further SRA

13  presses with litigation, the more money SRA and its investors will be forced to pay out of pocket

14  in Defendants' attorneys fees and costs."[62] The time has come to hold SRA accountable.

15  Rather than waiting until after an appeal mandate, "judicial economy is better served by

16  determining attorneys' fees promptly while the details of the proceedings are still fresh and when

17  the Federal Circuit has the opportunity to consider any appeal of the calculation at the same time

18  as the appeal on the merits." *Spitz Techs. Corp. v. Nobel Biocare USA LLC*, Case No. SACV 17-

19  00660 JVS (JCGx), 2018 WL 6016149, at *2 (C.D. Cal. Aug. 13, 2018); *see also* Fed. R. Civ. P.

20  54, Advisory Committee's Note (1993 amendments) ("Prompt filing affords an opportunity for the

21  court to resolve fee disputes shortly after trial, while the services performed are freshly in mind. It

22  also enables the court in appropriate circumstances to make its ruling on a fee request in time for

23  any appellate review of a dispute over fees to proceed at the same time as review on the merits of

24  the case."). SRA does not show good cause to postpone "fee consideration until after the circuit

25  court mandate, when the relevant circumstances will no longer be fresh in the mind of the district

26  judge." *Masalosalo by Masalosalo v. Stonewall Ins. Co.*, 718 F.2d 955, 957 (9th Cir. 1983).

27

28  [62] Ex. C at 1.

1

**IV.   CONCLUSION**

2

For the foregoing reasons, Facebook requests that the Court grant this motion and award its

3

reasonable attorneys' fees incurred since the issuance of *Alice* pursuant to 35 U.S.C. § 285.

4

5

Dated: September 23, 2020                           Respectfully submitted,

6

/s/ *Heidi L. Keefe*

7

COOLEY LLP
Heidi L. Keefe (178960)

8

hkeefe@cooley.com
Mark R. Weinstein (193043)

9

mweinstein@cooley.com
Lowell Mead (223989)

10

lmead@cooley.com
3175 Hanover Street

11

Palo Alto, CA 94304-1130
Telephone:      (415) 391-5400

12

Facsimile:      (415) 397-7188

13

Attorneys for Defendant
FACEBOOK, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Certificate of Conference

The undersigned certifies that counsel for the parties conducted a telephonic meet and confer and reached impasse regarding the relief requested in this motion on September 18, 2020.

/s/ *Heidi L. Keefe*
Heidi L. Keefe (178960)